[No. D003482. Fourth Dist., Div. One. Sept. 10, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH MONTERO, Defendant and Appellant.

418

Handy Horiye, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, M. Howard Wayne and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BUTLER, J.**—Ralph Montero was convicted by a jury of five counts of forcible rape (Pen. Code,[1] § 261, subd. (2)), five counts of unlawful sexual intercourse (§ 261.5) and one count of committing a lewd and lascivious act upon Marianna D., a child under 14 years of age (§ 288, subd. (b)). The jury hung on a forcible rape charge involving Marianna's sister Christina. The court declared a mistrial as to that count and dismissed it on the prosecution's motion in the interests of justice (§ 1385). The judge sentenced Montero to a 30-year prison term.

Montero appeals, contending there was insufficient evidence to support the forcible rape convictions, improper multiple convictions, instructional error, and sentencing error. We affirm.

I

At trial, Marianna testified to five separate acts of sexual abuse by Montero. The first act occurred in 1981 when she was 13 years old and lived in Brawley, California, with her mother, brother, two sisters and Montero. At that time, Marianna shared an upstairs bedroom with her two sisters.

Early in the morning of December 20, 1981, Montero came into the bedroom and shook Marianna awake. He told her to take off her clothes

---

[1]All statutory references are to the Penal Code unless otherwise specified.

but she refused. Montero then removed her clothing as well as his own. Marianna called out to her sister, who was asleep in the same room. Montero put his penis inside her vagina which hurt her. She was afraid of Montero.

The next act occurred in the early morning of October 15, 1982. Montero again entered Marianna's bedroom, woke her up and told her to take off her clothes. Marianna said she was too tired. Montero told her she always had excuses and proceeded to undress her. She told him not to take her clothes off and called out to her sister. Montero called Marianna dirty names and finished undressing her. He took his clothes off and put his penis inside her vagina. She felt pain and was afraid of Montero.

The last three incidents happened in the latter part of September 1984. On September 18, 1984, and again on September 19, 1984, Marianna was alone in her bedroom when Montero shook her awake and began taking off her clothes. On the 18th, she cried when he put his penis inside her vagina and told him she did not want him to do that. On the 19th, she called out to her mother. Montero called Marianna names as he took her clothes off and put his penis inside her vagina. She did not want him doing that. On September 21, 1984, the same sequence of events happened: Montero awakened Marianna, started taking off her clothes, argued with her about what he was doing, took off his own clothes and placed his penis inside her vagina. This time he said she was like her sisters and that she should not have come back. Each of these acts hurt Marianna and she testified she was afraid of Montero during each incident.

On cross-examination, Marianna testified that on December 20, 1981, Montero held her down when she tried to get up and squeezed her hand when she tried to scratch him. She called out to her sister three times. She reiterated her direct testimony concerning the other dates and explicitly stated she struggled and called out to her mother during the September 21, 1984 incident. Asked if Montero put his penis at the entrance of her vagina rather than in her vagina during each alleged act, Marianna replied, "I don't know." When further pressed for an answer, Marianna said "at the entrance."

Dr. Patricia Shreves then testified she performed a pelvic examination of Marianna September 28, 1984. Shreves observed Marianna's hymen was intact but the area around her urethra, inside the labia area of the vagina, was swollen and bruised. Shreves opined something had been done to the area on a constant basis, indicating it had been traumatized over a period of time.

## II

■ Montero contends there was insufficient evidence to support the forcible rape convictions. Specifically, he claims there was no proof of fear of immediate and unlawful bodily injury in any of the five separate incidents and no showing of physical force substantially different than that necessary to accomplish the acts themselves.[2]

■ When the sufficiency of the evidence is challenged, we must review the entire record in the light most favorable to the judgment so as to determine whether it contains substantial evidence from which the jury could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Substantial evidence must support each essential element of an offense. (*Id.,* at p. 577.) A judgment of conviction will not be set aside for insufficiency of the evidence to support the jury's verdict unless it is clearly shown there is no basis on which the evidence can support the conclusion of the jury. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) The credibility of witnesses and the weight to be accorded to the evidence are matters to be determined by the trier of fact. (Evid. Code, § 312; *People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

■ As amended in 1980, section 261, subdivision (2) makes criminal any act of sexual intercourse accomplished with a person not the spouse of the perpetrator where it is accomplished against that person's will by means of force or fear of immediate and unlawful bodily injury on the person or another. ■■ The amended section deletes earlier provisions relating to the element of resistance connected with force, violence or threats (see *People* v. *Salazar* (1983) 144 Cal.App.3d 799, 807 [193 Cal.Rptr. 1]), and makes it clear rape may be committed by acts causing only fear of immediate bodily injury to the victim or another and no longer requires threats of imminent harm (*People* v. *Bermudez* (1984) 157 Cal.App.3d 619, 624 [203 Cal.Rptr. 728]).

Under earlier law, forcible rape required an accused employ that degree of force necessary under the circumstances to overcome the victim's resis-

---

[2]Remarkably, Montero does not challenge the sufficiency of evidence on the forcible lewd conduct count as he relies primarily on the definition of force in a section 288, subdivision (b) case, *People* v. *Cicero* (1984) 157 Cal.App.3d 465, 473-479 [204 Cal.Rptr. 582], to challenge the substantiality of evidence on the rape charges. (See section IV C. discussion, *post.*)

tance. (*People* v. *Wheeler* (1977) 71 Cal.App.3d 902, 907 [139 Cal.Rptr. 737].) However, the "victim need only make such resistance as [would] reasonably manifest . . . refusal to consent to the act." (*People* v. *Hunt* (1977) 72 Cal.App.3d 190, 194 [139 Cal.Rptr. 675].) And in deciding whether a defendant's acts upon a victim were accomplished by force or fear, verbal threats were not crucial to conviction—they could be inferred from conduct or implied from the circumstances. (*People* v. *La Salle* (1980) 103 Cal.App.3d 139, 148 [162 Cal.Rptr. 816].) "Although resistance is no longer the touchstone of the element of force, the reviewing court still looks to the circumstances of the case, including the presence of verbal or non-verbal threats, or the kind of force that might reasonably induce fear in the mind of the victim, to ascertain sufficiency of the evidence of a conviction under section 261, subdivision (2). [Citations.] Additionally, the [victim's] conduct must be measured against the degree of force manifested or in light of whether her fears were genuine and reasonably grounded. . . . [T]he trier of fact 'should be permitted to measure consent by weighing both the acts of the alleged attacker and the response of the alleged victim, rather than being required to focus on one or the other.' [Citation.]" (*People* v. *Barnes* (1986) 42 Cal.3d 284, 304 [228 Cal.Rptr. 228, 721 P.2d 110].)

"Because the fundamental wrong [in rape] is the violation of a [victim's] will and sexuality, . . . 'force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been taken against a victim's will." (*People* v. *Cicero, supra,* 157 Cal.App.3d 465, 475.)

Moreover, since 1980, only fear of immediate bodily injury need be shown. ■ Fear generally has two common meanings: (1) "A feeling of alarm or disquiet caused by the expectation of danger, pain, disaster, or the like; terror; dread; apprehension" (American Heritage Dict. (1981) p. 480) and (2) "Extreme reverence or awe, as toward a supreme power" (*ibid.*).

■ Here, the victim was a child of 13, 14 and 16 at the time of the respective acts. Montero lived in the victim's house with her mother, apparently in a type of stepfather relationship with Marianna. Each act took place in the nighttime with Montero shaking Marianna awake, taking off her clothes after she refused to do so, and admittedly performing the sexual acts without her consent. Marianna testified she was afraid of Montero, cried out for help, and was hurt by the acts he performed. Expert testimony confirmed Marianna suffered physical bruising and swelling and that her vaginal area had been traumatized over a period of time.

While the record could have been more explicit on Marianna's fear and the amount of force involved, in light of all the circumstances present, i.e., Marianna's tender age, the position of apparent authority held by Montero,

the ongoing and continuous exploitation of a resisting and defenseless Marianna awakened in the middle of the night, we find substantial evidence of force and fear from which the jury could find beyond a reasonable doubt Marianna was in fear of immediate and unlawful bodily injury and Montero committed the acts with force. (See *People* v. *Jones* (1984) 155 Cal.App.3d 153, 173 [202 Cal.Rptr. 162]; *People* v. *Reyes* (1984) 153 Cal.App.3d 803, 810-811 [200 Cal.Rptr. 651].)

III

By way of footnote, Montero additionally claims he had ineffective assistance of counsel because his counsel on cross-examination of Marianna elicited evidence concerning the December 20, 1981 and September 21, 1984, incidents showing more fully Montero used force. Without such evidence, he argues, there would be insufficient evidence to support the December 20, 1981 and September 21, 1984, forcible rape convictions.

The burden of proving ineffective assistance of counsel is on defendant. He must show that trial counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate, which failure resulted in the withdrawal of a potentially meritorious defense (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]), or that it is reasonably probable a more favorable result would have occurred in the absence of counsel's alleged failure (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144]).

Our review is limited to the record before us as Montero has not filed a corresponding petition for habeas corpus. (See *People* v. *Pope, supra,* 23 Cal.3d at pp. 426-427, fn. 17; *People* v. *Apodaca* (1978) 76 Cal.App.3d 479, 489, fn. 3 [142 Cal.Rptr. 830].) The record is totally silent as to the exact reasons defense counsel cross-examined Marianna in the manner he did. From closing argument though, it appears Montero's strategy was to argue there was no evidence to establish the element of penetration for rape and Marianna was an inherently unbelievable witness. Consequently, counsel's attempt to have Marianna clarify what happened during the five incidents was what any reasonably competent attorney would have done. Through his cross-examination, he did get Marianna to admit Montero merely placed his penis against her vagina and not in it, and elicited other contradictions in her testimony.

Regardless, we have found sufficient evidence in the record absent the testimony elicited by defense counsel on the December 20, 1981 and September 21, 1984, incidents to show force and fear. Thus, even assuming incompetence of counsel, it is not probable a more favorable result would

occur on remand in the absence of the evidence adduced on cross-examination. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243].)

## IV

Claiming reversible error, Montero next attacks jury instructions given as improper and maintains other instructions should have been given. He specifically contends the court erred in giving a consent instruction under section 261.6 for the offenses occurring before the enactment of that section, and erred by failing to instruct sua sponte the jury was to recommend punishment for the December 20, 1981, statutory rape count, on the reasonable belief in consent to the commission of a lewd act under section 288, subdivision (b), and on the definition of force for the forcible rape and lewd conduct counts. We state familiar rules for our discussion. ■ ·"The trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' [Citations.] 'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference . . . .' [Citation.]" (*People* v. *Saddler* (1979) 24 Cal.3d 671, 681 [156 Cal.Rptr. 871, 597 P.2d 130].) With these in mind, we address Montero's various claims of instructional error.

## A.

■ At the close of testimony on the sexual acts with Marianna and the one act with her sister Christina, the court instructed the jury under CALJIC No. 1.23.1 as to the meaning of consent in forcible rape. Montero contends the use of this definition was an improper ex post facto application of section 261.6 as to the December 20, 1981, and October 15, 1982, rapes of Marianna.

Section 261.6, enacted in 1982 and effective on January 1, 1983, provides: "In prosecutions under Section 261, 286, 288a or 289, *in which consent is at issue,* 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved."[3] (Italics added.)

---

[3]CALJIC No. 1.23.1 adopts the language of section 261.6.

We need not determine whether the instruction given was an improper ex post facto application as consent was not at issue as to the crimes against Marianna; consent was only applicable as a defense concerning the forcible rape charge against Christina. The defense theories as to the crimes against Marianna were that they were fabricated and there was no force, fear or penetration proved. In fact, Montero concedes in his opening brief Marianna did not consent on any of the five occasions.

■ In a related argument, Montero asserts the court erroneously failed to instruct on the defense of mistaken belief as to consent regarding the lewd conduct charge. The court, however, need only give such instruction sua sponte where it appears the defendant is relying on such defense, or if there is substantial evidence to support such defense and the defense is not inconsistent with the defendant's theory of the case. (*People* v. *Hampton* (1981) 118 Cal.App.3d 324, 329 [173 Cal.Rptr. 268].) Here, there is no evidence of equivocal conduct by Marianna which could have led Montero to reasonably believe there was consent; this he has admitted. Moreover, where, as here, the record shows the presence of physical force, resulting in physical harm, consent or reasonable belief of consent is not a defense. (*People* v. *Cicero, supra,* 157 Cal.App.3d 465 at p. 484.) Montero's contentions concerning "consent" are meritless.

## B.

■ Montero correctly points out the court failed to properly instruct the jury under CALJIC No. 10.14 on the extent of their responsibility for determining the punishment for the December 20, 1981 unlawful sexual intercourse count. (§ 261.5.)

Section 264, applicable in 1981, provided, in pertinent part: "Unlawful sexual intercourse, as defined in Section 261.5, is punishable either by imprisonment in the county jail for not more than one year or in the state prison, and in such case the jury shall recommend by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison . . . ."[4] Thus, section 264 had a "built-in safeguard against the imposition of a long state prison sentence in the case of a trivial sexual indiscretion[:] the power of the jury to determine that the offense be only a misdemeanor with a maximum punishment of one year's imprisonment in the county jail." (*People* v. *Brown* (1973) 35 Cal.App.3d 317, 328 [110 Cal.Rptr. 854].) The jury's recommendation was considered an essential part of the verdict and was conclusive and binding upon the trial court as

---

[4]The 1981 Legislature amended section 264 to eliminate any requirement the jury recommend punishment. (See Stats. 1981, ch. 110, § 2, p. 843.)

far as pronouncement of judgment was concerned. (*People* v. *Pantages* (1931) 212 Cal. 237, 270 [297 P. 890].) Accordingly, the court erred by failing to instruct sua sponte the jury must recommend punishment in their verdict for the December 30, 1981, section 261.5 charge pursuant to CALJIC No. 10.14.[5]

We now determine whether such error requires reversal.

■■■ Recently, the California Supreme Court in *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], held instructional errors which deny a defendant the right to have each element of a charged crime decided by the jury are reversible per se unless certain exceptions apply.[6] (*Id.*, at p. 550.) This case, however, is distinguishable from *Garcia* and other cases requiring application of this per se reversal.

The court here instructed the jury as to the elements which must be proved for a conviction of unlawful sexual intercourse: (1) that the defendant engaged in an act of sexual intercourse with a female person; (2) that the female was not his wife; and (3) that she was under 18 years of age. (CALJIC No. 10.10.)

A finding by the jury the punishment should be in county jail or in prison is clearly not a necessary element for a conviction of section 261.5. Thus, failure to instruct the jury on its responsibility upon finding Montero guilty of the crime did not deprive Montero of his right to have the jury decide each element of section 261.5. Therefore, reversal is not required.

Under the facts of this case, we find omission of the proper instruction to be harmless error. The jury found Montero guilty of forcible rape and lewd conduct based on the same facts presented for the unlawful sexual intercourse on December 20, 1981. Consequently, it is improbable the jury

---

[5]CALJIC No. 10.14 stated: "Unlawful sexual intercourse is punishable either by imprisonment in the county jail or in the state prison. If you find the defendant guilty of unlawful sexual intercourse, you shall recommend by your verdict whether the punishment shall be by imprisonment in the county jail, which would make the crime a misdemeanor, or in the state prison, which would make the crime a felony."

[6]These exceptions were summarized in *People* v. *Ramos* (1984) 37 Cal.3d 136 [207 Cal.Rptr. 800, 689 P.2d 430]: "(1) '"if the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the instruction had no bearing on the offense for which he was convicted,"' [citation], (2) '"if the defendant conceded the issue of intent"' [citation], (3) if '"the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions"' [citation], or (4) under limited circumstances, if 'the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration.' [Citations.]" (At pp. 146-147.)

would have reached a different conclusion had it been given the proper instruction. (*People* v. *Watson, supra,* 46 Cal.2d 818 at pp. 836-837.)

## C.

 Relying on *People* v. *Cicero, supra,* 157 Cal.App.3d 465 at pages 473-479, and *People* v. *Kusumoto* (1985) 169 Cal.App.3d 487 [215 Cal.Rptr. 347], Montero asserts the trial court committed reversible error when it failed to instruct sua sponte on the definition of force for the five forcible rape counts and the one forcible lewd and lascivious conduct count. While acknowledging neither case involved the crime of rape, Montero maintains each derived its meaning of force from the force required in rape (*People* v. *Cicero, supra,* at pp. 475-476; *People* v. *Kusumoto, supra,* at pp. 493-494), and argues forcible rape cases as well as forcible lewd and lascivious conduct cases now require the technical definition of that term be given even in the absence of a request.

As discussed earlier, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. "A trial court has no *sua sponte* duty to give amplifying or clarifying instructions in the absence of a request where the terms used in the instructions given are 'commonly understood by those familiar with the English language'; it does have such a duty where the terms have a 'technical meaning peculiar to the law.' [Citations.]" (*People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816].) Montero did not request an amplifying or clarifying instruction. Rather he contends *Cicero* and *Kusumoto* hold force has taken on a technical meaning not readily known to the average lay juror. (*People* v. *Cicero, supra,* 157 Cal.App.3d at p. 474; *People* v. *Kusumoto, supra,* 169 Cal.App.3d at pp. 492-494.) Therefore, the court was required to instruct sua sponte on its definition.

In *Cicero,* the first California decision to construe the term "force" as used in section 288, subdivision (b) (subd. (b)), the defendant approached two young girls throwing rocks into a waterway. Under the friendly guise of throwing the girls, ages 11 and 12 years, in the water, the defendant picked up the girls by the waist, carried them along under his arms, and felt their crotches. (*People* v. *Cicero, supra,* 157 Cal.App.3d 465 at p. 470.) In finding sufficient evidence to support the subdivision (b) convictions, the court in *Cicero* held: "Where a defendant uses physical force to commit a lewd act upon a child under the age of 14, and the child suffers physical harm as a consequence, the defendant has committed a lewd act 'by use of force' under subdivision (b). . . . Where no physical harm to the child has occurred, the prosecution has the burden of proving (1) that the defendant used physical force substantially different from or substantially in excess

of that required for the lewd act and (2) that the lewd act was accomplished against the will of the victim." (*Cicero, supra,* at p. 484.) Because the *Cicero* facts involved no physical harm to either victim, the court reviewed the sufficiency of evidence question under the latter two rules. The court noted that before the 1981 amendment of subdivision (b), which deleted the element of being "against the will of the victim" from the statute (Stats. 1981, ch. 1064, § 1, p. 4093), "both logic and fairness compel[led] the conclusion that 'force' in subdivision (b) must reasonably be given the same established meaning it has achieved in the law of rape: 'force' should be defined as a method of obtaining a child's participation in a lewd act in violation of a child's will and not exclusively as a means of causing physical harm to the child." (*Cicero, supra,* at pp. 475-476.) The court then examined the legislative changes in both the forcible lewd and lascivious conduct and forcible rape statutes and concluded the 1981 amendment to section 288 did not really delete the nonconsensual or "against the will" element, but "eliminate[d] any requirement that the People prove resistance by the victim in a prosecution for violation of subdivision (b)." (*Id.,* at pp. 479-481.) This interpretation brought the forcible lewd conduct statute in line with the 1980 amended forcible rape statute which removed the resistance element for prosecutions under its section. (See Stats. 1980, ch. 587, § 1, p. 1595.)

In applying the *Cicero* holding retroactively, *People* v. *Pitmon* (1985) 170 Cal.App.3d 38, 47, 52 [216 Cal.Rptr. 221], another subdivision (b) case, held the lower court erred by failing to instruct sua sponte on the *Cicero* definition of force. The error, however, was found to be harmless under the circumstances of the case because a finding of force was not necessary for a conviction under that section as duress had been shown. Under section 288, the jury can alternatively find a defendant used "violence, duress, menace or threat of great bodily harm" in the commission of the lewd acts to find the defendant guilty of subdivision (b). (*Pitmon, supra,* at p. 53.) The facts in *Pitmon,* like those in *Cicero,* did not involve physical harm to the victim.

Recently, this court in *People* v. *Kusumoto, supra,* 169 Cal.App.3d 487, construed the term "force" in section 289, subdivision (a) (subd. (a)). That section provides for punishment of a defendant for penetrating the genital or anal openings of another person "by any foreign object, substance, instrument, or device when the act is accomplished against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another" for sexual arousal, gratification, or abuse (subd. (a)). In *Kusumoto,* the 13-year-old victim awoke to find the defendant's hand in her shorts and finger in her vagina. She suffered no physical harm. We held there was insufficient evidence of

"force" where the penetration occurred while the victim was asleep and her "will was not overcome by any physical force substantially different from or greater than that necessary to accomplish the act itself." (*People v. Kusumoto, supra,* 169 Cal.App.3d 487 at p. 494.)

This case differs significantly from *Kusumoto, Cicero* and *Pitmon.* Here Montero caused the victim physical harm over and above that inherent in the sex acts, while in each of those cases no physical harm was present. (See *People* v. *Caudillo* (1978) 21 Cal.3d 562, 577-578 [146 Cal.Rptr. 859, 580 P.2d 274].) *Cicero* only requires a technical definition of force if no physical harm to the victim is shown. (*People* v. *Cicero, supra,* 157 Cal.App.3d 465 at p. 484.) No clarifying or amplifying instruction on force is needed where, as here, the evidence establishes force by physical harm. Dr. Shreves testified Marianna's urethra area was visibly swollen, bruised and traumatized over a long period of time. Such evidence shows force over and above penetration, however slight, for the rape charges, and over and above any touching of the body for the lewd conduct. No further definition of force was required under these circumstances.

Moreover, the court correctly instructed the jury on the general legal principles relevant to the proof of forcible rape and forcible lewd and lascivious conduct. Accordingly, we conclude the court was not required to explain or amplify the term "force" on its own motion for either the forcible rape counts or forcible lewd conduct count. There was no instructional error.[7]

V

Montero's improper multiple convictions contention has recently been addressed and decided against him by our Supreme Court. *People* v. *Pearson* (1986) 42 Cal.3d 351 [228 Cal.Rptr. 509, 721 P.2d 595], holds a defendant may properly be convicted of more than one crime based on the same act but cannot suffer future additional punishment based on the conviction under repeat offender enhancement statutes.

In *Pearson,* the defendant was convicted of both statutory sodomy and lewd conduct for the commission of a single act of sodomy. Pearson argued

---

[7]We do not reach the issue whether the *Cicero* definition of force is required in all forcible rape cases without some evidence of physical harm beyond the act itself. We merely note the recent California Supreme Court case *People* v. *Barnes, supra,* 42 Cal.3d 284 (which involves the rape of a woman without evidence of physical harm other than the act itself, and clarifies the elimination of the resistance element from § 261, subd. (2)), relies on the common law and preamendment rape cases defining force to evaluate the sufficiency of the evidence. From this, we can only assume no new technical definition of force has arisen from the amendment to the forcible rape statute.

the multiple convictions were improper because he could not be convicted of both a greater and lesser included offense and that statutory sodomy (§ 286, subd. (c)) necessarily included the lesser offense of lewd conduct (§ 288, subd. (a)) or, alternatively, the sodomy convictions are "specifically included" in the language of lewd conduct. The Supreme Court noted Pearson's first premise, although a correct legal statement, did not apply because his second alternative arguments failed. (*People* v. *Pearson, supra,* 42 Cal.3d 351, at pp. 354-355.) The court reiterated the test in California for finding "necessarily included offenses" and found lewd conduct is not a lesser included offense of statutory sodomy because the lewd conduct statute requires specific intent whereas statutory sodomy is a general intent crime. (*Id.,* at pp. 355-356.) Further, the Supreme Court declined to follow its earlier cases finding sex crimes provided for in part one of the Penal Code are "specifically included offenses" analogous to "necessarily included offenses" which prohibit multiple convictions. (At pp. 357-358.) Finally, the court addressed the problem of permitting multiple convictions while protecting the defendant from multiple punishment. (At pp. 358-363.) The court found section 654 prohibits punishment for a stayed offense (at pp. 361-363), and in a footnote advised trial judges that to avoid any misconception in future cases involving stayed multiple convictions, "the stayed convictions [should] be formally dismissed on completion of the defendant's sentence and parole on the conviction for which he is to be punished." (At p. 363, fn. 4.)

In this case, the court sentenced Montero on each of the five forcible rape counts and stayed the punishment for the five unlawful sexual intercourse counts and the one forcible lewd act count. According to *Pearson,* this was the proper way for the court to treat the multiple convictions based on the same five acts as the forcible rape convictions; only multiple punishment for multiple convictions is improper. As in *Pearson,* the crimes here are not lesser included or necessarily included in the other; i.e., the crime of unlawful sexual intercourse is not necessarily included in the crime of forcible rape (*People* v. *Gutierrez* (1982) 137 Cal.App.3d 542, 548 [187 Cal.Rptr. 130]), forcible rape and unlawful sexual intercourse are not necessarily included offenses of the crime of lewd and lascivious conduct (*People* v. *Gordon* (1985) 165 Cal.App.3d 839, 862-864 [212 Cal.Rptr. 174]), and forcible lewd conduct which requires specific intent to commit that crime is not necessarily included in the forcible rape crime requiring only general intent (*People* v. *Pearson, supra,* 42 Cal.3d 351 at pp. 355-356). While unlawful sexual intercourse and forcible rape have been held to be "specifically included offenses" in forcible lewd conduct (*People* v. *Greer* (1947) 30 Cal.2d 589, 604 [184 P.2d 512]; *People* v. *Osuna* (1984) 161 Cal.App.3d 429 [207 Cal.Rptr. 641]), *Pearson* specifically distinguishes the *Greer* rule of reversing "specifically included offenses" in favor of the

plain language of sections 954 and 654.[8] (*People* v. *Pearson, supra,* 42 Cal.3d at pp. 357-361.) Having done so, we conclude Montero was properly convicted of all eleven offenses and the court properly used the procedure of staying execution of sentence for all but one conviction arising out of each act.

## VI

 The court in effect sentenced Montero under section 667.6, subdivision (d) for the five forcible rapes.[9] Section 667.6, subdivision (d) requires the sentencing court to impose full consecutive sentences for each violation of "subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm if such crimes involve separate victims or involve the same victim on separate occasions." (§ 667.6, subd. (d).) Montero challenges the court's use of section 667.6, subdivision (d) to sentence him to 30 years in prison.

### A.

 Because forcible rape can be accomplished by means of force or fear of immediate and unlawful bodily injury, Montero argues special jury findings are required stating which of the alternative elements in the section 667.6, subdivision (d) phrase, "force, violence, duress, menace or threat of great bodily harm," it finds he has committed. Otherwise, the jury may have only found him guilty of rape by means of fear of immediate and unlawful bodily injury which is not a violent sex crime under section 667.6, subdivision (d). We disagree.

Rape by either force or fear of immediate and unlawful bodily injury, or both, is a forcible sex offense constituting a violent sex crime under section 667.6, subdivision (d). The cases on which Montero bases his argument are inapposite; they pertain only to violations of sodomy or oral copulation

---

[8]Section 954 states in part, "the defendant may be convicted of any number of the offenses charged," and section 654 states in part, "An act or omission which is made punishable in different ways by different provisions of [the Penal] Code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

[9]The court here sentenced Montero to a middle base term on the count two forcible rape and then imposed full consecutive terms under section 667.6, subdivision (d) for the remaining four forcible rapes. Under section 667.6, subdivision (d), each applicable violent sex crime is to be a full consecutive term imposed without reference to section 1170.1. The court's sentencing count two as the principal term under section 1170.1 is technically incorrect. The abstract of judgment should be amended to reflect count two is a full-consecutive term without reference to section 1170.1.

under section 286 or 288a. (See *People* v. *Reber* (1986) 177 Cal.App.3d 523 [223 Cal.Rptr. 139]; *People* v. *Riffey* (1985) 171 Cal.App.3d 419 [217 Cal.Rptr. 319]; *People* v. *Foley* (1985) 170 Cal.App.3d 1039 [216 Cal.Rptr. 865]; *People* v. *Reyes, supra,* 153 Cal.App.3d 803.)

The phrase in section 667.6, subdivision (d) simply does not apply to subdivision (2) of section 261. We agree with the rationale in *People* v. *Foley* the 1980 amendment to section 261, subdivision (2) was not intended to change the existing statutory scheme of including a section 261, subdivision (2) conviction, without further findings, within section 667.6, subdivision (c). (*People* v. *Foley, supra,* 170 Cal.App.3d 1039 at p. 1057, fn. 11; accord *People* v. *Riffey, supra,* 171 Cal.App.3d 419 at p. 424, fn. 5.) The same rationale applies to section 667.6, subdivision (d). The only difference between subdivisions (c) and (d) for purposes of invoking either section is that under subdivision (d) multiple sex crimes must involve separate victims or involve the same victim on separate occasions. Here, the jury found Montero committed multiple forcible rapes upon the same victim, Marianna, on five separate occasions. No further finding by the jury is required to include Montero's rape convictions within section 667, subdivision (d).

## B.

Montero additionally contends the case must be remanded to allow the court to exercise its full sentencing discretion under section 1385. Relying on the language in *People* v. *Fritz* (1985) 40 Cal.3d 227 [219 Cal.Rptr. 460, 707 P.2d 833], and the fact all published cases indicate sentencing is mandatory under section 667.6, subdivision (d), Montero argues the record does not show the trial court realized its discretion under section 1385 to dismiss some of the convictions for forcible rape or stay their punishment in the furtherance of justice.

Section 1385 states in pertinent part: "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes." *People* v. *Fritz, supra,* 40 Cal.3d 227, addressed the relationship of section 1385 to the mandatory language of section 667 regarding enhancements for prior serious felony convictions and held the trial court still has discretion to strike under section 1385. (*Id.,* at pp. 229-231.)[10] Montero thus concludes the trial judge must here, as in the section 667 situation, be permitted to exercise his discretion if he so chooses.

[10]The Legislature has recently enacted urgency legislation amending sections 667, subdivision (a) and 1385 to nullify this holding. (Stats. 1986, ch. 85, §§ 1-4 [eff. May 6, 1986].)

Montero correctly notes all reported cases to date have found the sentencing provisions of section 667, subdivision (d) mandatory and our latest Supreme Court case on this section restates that mandate. In *People* v. *Craft* (1986) 41 Cal.3d 554 [224 Cal.Rptr. 626, 715 P.2d 585], the Supreme Court says, "[s]ubdivision (d) . . . provides that the court is without discretion in the matter, but *must* impose full, separate, and consecutive terms 'if such crimes involve separate victims or involve the same victim on separate occasions.' [Fn. omitted.] When the court sentences under subdivision (d), it need not give a statement of reasons. [Citation.]" (*Id.*, at p. 559.) A court also need not state reasons for rejecting a sentencing choice (see Advisory Com. comment, Cal. Rules of Court, rule 443) and a decision to dismiss, strike or stay under section 1385 is a sentencing choice.

Even though Montero's trial counsel conceded sentencing was mandatory under section 667.6, subdivision (d) and the trial court was not required to state reasons for sentencing under that section, contrary to Montero's assertion on appeal the record is silent as to the court's exercise of discretion, the record reveals the court chose to sentence under section 667.6, subdivision (d) rather than under section 1170.1.[11] Montero has not affirmatively shown any abuse of discretion by the sentencing judge. In the absence of such evidence, we read the record as showing the trial court properly considered section 1385 in imposing sentence. (See *People* v. *Martinez* (1985) 175 Cal.App.3d 881 [221 Cal.Rptr. 258].)

C.

■ We address one other point. In his last argument on section 667.6, subdivision (d), Montero suggests his mandatory 30-year sentence is cruel and unusual punishment. This argument was not made to the trial court and he does not support his argument with any evidence necessary to an analysis under *Lynch/Dillon* to determine whether his sentence comes within constitutionally accepted limits. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697]; *In re Lynch* (1972) 8 Cal.3d 410, 423-425 [105 Cal.Rptr. 217, 503 P.2d 921].) However, "[i]n view of the outrageous nature of this type of offense and in view of the danger that these offenses pose to society we cannot say that the imposition of consecutive sentences for multiple sex offenses shocks the conscience and offends fun-

---

[11]In sentencing under section 667.6, subdivision (d), the court stated: "The court feels that having reviewed all of the circumstances of the case, the long period of time that this conduct was ongoing, the fact that it continued, the fact that the defendant is—not just one time that he did this, but he continued this conduct, the fact that there were a number of criminal acts inflicted and the fact that the [victim was] of tender years . . . the court determines that it is appropriate to impose sentences in this case under 667.6 of the Penal Code rather than 1170 provisions."

damental notions of human dignity. [Citation.]" *(People* v. *Bestelmeyer* (1985) 166 Cal.App.3d 520, 531 [212 Cal.Rptr. 605].)

Judgment affirmed. The court is directed to amend the abstract of judgment in accordance with this opinion.

Kremer, P. J., and Lewis, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 25, 1986.