Filed 12/24/25  P. v. Ferris CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN FERRIS,<br><br>    Defendant and Appellant. | D084097<br><br><br><br>(Super. Ct. No. SCE413425) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed with directions.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

Steven Ferris appeals his convictions and sentence on three counts of forcible penetration in violation of Penal Code[1] section 289, subdivision (a), and one count of furnishing marijuana to a minor in violation of Health & Safety Code section 11361, subdivision (b). These convictions, along with other counts not at issue on appeal, stem from a series of assaults he committed against K.S., the 15-year-old daughter of Ferris's friends.

First, Ferris challenges all three section 289 counts, claiming there was no substantial evidence he penetrated K.S. "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 289, subd. (a)(1)(C).) We reject his contention, finding substantial evidence of "force" in connection with counts 7 and 10, and substantial evidence of "fear" in connection with count 13.

Second, Ferris argues the trial court erred by failing to give a lesser included offense instruction with respect to counts 6 and 7. He claims there was substantial evidence of the lesser included offense of attempted penetration because K.S. testified he tried, but was unable, to put his finger inside her vaginal canal. Because Ferris undisputedly inserted his finger inside K.S.'s labia majora, the evidence only supports a completed offense under the statutory definition of "sexual penetration." Thus, the court was not required to instruct the jury on a lesser included offense.

Finally, Ferris contends the trial court erred by sentencing him to full, consecutive terms on the forcible penetration and furnishing marijuana counts. Although we find a technical error in the abstract of judgment, the trial court properly imposed full term consecutive

---

1      Undesignated statutory references are to the Penal Code.

2

sentences.  Thus, while we order correction of the abstract in accordance with our discussion below, we otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Underlying Events*

At the time of these offenses, K.S. lived with her mother, stepfather, grandmother, and siblings in a squalid apartment.  Ferris was close friends with K.S.'s parents and had known K.S. since she was born, spending birthdays with the family and purchasing gifts for the children. Ferris would visit their apartment a few times a week, often playing video games with K.S.

On several occasions, Ferris gave K.S. marijuana, which they smoked with her parents.  He sexually assaulted K.S. multiple times beginning in 2021, when she was 15 years old and he was 29 years old.

### 1.    *First Assault* (*Counts 6 and 7*)

One evening in December 2021, K.S. and Ferris were alone playing video games on the couch.  Ferris moved closer to K.S. on the couch and put his arm around her shoulder.  At first this felt "normal" to K.S. because she saw him "like family."  However, he then reached to K.S.'s back and unhooked her bra from behind.  K.S. testified, "I felt like it did not feel right.  I was frozen.  I really did not understand what was going on."

Ferris reached under the front of her shirt and put his hand on her breast, "fiddling" with it.  K.S. did not remember being scared, but said she was "frozen."  Ferris asked K.S., " 'Is this okay' " and " 'does it feel good' " multiple times.  K.S. did not respond, but was "making like a monotone sound not really making noise, but just kind of ignoring it and just looking straight forward" and hoping the touching would stop.  Ferris

3

pulled K.S.'s shirt up over her chest and tried to pull her closer to him. K.S. used her elbow to push him away and told him to stop. Ferris did not stop and continued pulling her thigh towards him.

Ferris was able to pull K.S. onto his lap. He reached his hand up her shorts, moved her underwear to the side, and put his finger inside of her labia. He "tried to put his finger inside of [her vagina], but it would not go in." She told him to stop and that it "hurt really bad." She testified she did not want his finger in her vagina.

2.    *Second Assault and First Attempt at Reporting*

K.S. also testified to a later incident in which Ferris put his hand down her shorts and rubbed her buttocks. He put his hand on her thigh as she kept nudging him away. According to K.S., "[H]e said[,] 'Stop. Stop. You are messing me up. You are messing me up.' " K.S. "kept telling him, 'Do not touch me. I do not want you to touch me,' " and remembered him saying, "Whatever." Ferris then lifted up her shirt as she "tried to push him and say 'stop.' " Ferris did not stop, but "lick[ed] around [her] left nipple multiple times." K.S. testified she felt "grossed out," "uncomfortable," "shock[ed]," and a little scared.

K.S. was reluctant to tell her mother and stepfather because Ferris was "their best friend" and she did not think they would believe her. Instead, K.S. told her grandmother about the assaults. When she and her grandmother together told her mother what had happened, the mother seemed annoyed and uninterested. According to K.S., her mother said, " '[Y]ou are changing up your story. How do I know you are actually telling the truth?' " Even so, after this conversation, K.S. was under the impression that Ferris would stay away from their home for a while.

3.    *Third Assault* (*Count 10*)

Shortly after K.S. told her mother about the assaults, Ferris came back to their apartment. After talking to K.S.'s parents, he came into the room where she was playing video games and sat on the couch next to her. K.S. testified, "[H]e pushed me, not like pushed, but he leaned me against the [arm of the couch] and pulled my shorts and underwear away and he put his finger up my butt." When asked "how much force" Ferris was using to lean her against the couch, K.S. said it was about a 5 out of 10. She said she could have fought back but she "froze" and was "scared." She said the penetration "was painful" and it felt like her body was rejecting it.

4.    *Fourth Assault* (*Count 13*) *and Further Reporting*

On a fourth occasion, Ferris was smoking marijuana on the couch next to K.S., cajoling her to smoke. He blew smoke in her face repeatedly, which she did not like. K.S. said she could not recall most of the circumstances of this assault, but confirmed that Ferris again put his finger in her anus. She testified she did not want his finger in her anus.

At some point, K.S.'s mother said she would talk to her stepfather about the abuse, and K.S. later heard him shouting at Ferris. The next day, her mother said, "[Y]our dad talked to [Ferris]. He fessed up a little bit, but did not fully open up." K.S. testified her mother "said that if I want to play video games I can play video games online on TV with him." She was under the impression that Ferris would not be coming to their home anymore, which made her feel safer.

K.S. said her parents later decided that she "did not have a decision in this choice," and continued to let Ferris come over at night while the children were asleep. K.S. was scared and would hide in her room when Ferris was over.

5

K.S. eventually felt like she needed to get out of her home, and she called a "mobile crisis line." The social worker K.S. spoke to reported the abuse to law enforcement officials, who began an investigation.

After K.S. told law enforcement about Ferris's assaults, K.S.'s mother accused her of being a liar and grounded her. Her stepfather shouted at her and "was a complete jerk" when she told him she was contemplating suicide. They told her she was "putting an innocent man in jail," "making stuff up," and "probably mixing everything up" because she was "a child" who did "not see things right."

## B. *Charges and Trial*

Ferris was charged with lewd acts upon a child under Penal Code section 288, subdivision (c)(1) (seven counts, which are not at issue on appeal); sexual penetration under section 289, subdivision (i) (three counts, including count 6); sexual penetration by force under section 289, subdivisions (a)(1)(A) and (C) (counts 7, 10, and 13); and furnishing cannabis to a minor under Health & Safety Code section 11361, subdivision (b) (count 14). A jury found Ferris guilty on all counts.

The trial court sentenced Ferris to a total of 24 years in prison. The court imposed consecutive terms on counts 7, 10, and 13 (penetration by force), as well as count 14 (furnishing cannabis to a minor). It stayed the sentences on counts 9 and 12 under section 654 and ordered sentences on other counts to run concurrently.

## DISCUSSION

Ferris raises three arguments on appeal. First, he claims there was insufficient evidence to support the jury verdicts on counts 7, 10, and 13. Second, he argues the trial court was required to give a lesser included offense instruction in connection with counts 6 and 7 because there was

6

substantial evidence supporting attempted penetration.  Finally, he contends the trial court was not authorized to impose a consecutive sentence on count 14.

## A.     *Sufficiency of the Evidence Supporting Counts 7, 10, and 13*

"In reviewing the sufficiency of the evidence to support a jury's verdict finding a defendant guilty of a criminal offense, we apply the substantial evidence standard of review."  (*People v. Johnson* (2019) 32 Cal.App.5th 26, 57.)  We view "the trial evidence in the light most favorable to the prosecution and presum[e] every fact the jury could reasonably deduce from that evidence."  (*People v. Pearson* (2012) 53 Cal.4th 306, 319.)  We " ' "must accept logical inferences that the jury might have drawn from the evidence even if [we] would have concluded otherwise." ' "  (*People v. Solomon* (2010) 49 Cal.4th 792, 811–812.)  Reversal is "unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the convictions].' "  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Ferris claims there was insufficient evidence supporting his convictions on counts 7, 10, and 13 for violating section 289, subdivisions (a)(1)(A) and (a)(1)(C).  Section 289, subdivision (a)(1)(C) provides:

> "Any person who commits an act of sexual penetration upon a minor who is 14 years of age or older, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 6, 8, or 10 years."  (*Ibid.*)

Ferris challenges these three counts on the ground he did not employ "force, violence, duress, menace, or fear of immediate and unlawful bodily injury."

7

1. *Count 7*

Ferris argues "[t]he prosecution presented no evidence that Ferris ever used force on [K.S.]" The jury was instructed, "An act is *accomplished by force* if a person uses enough physical force to overcome the other person's will." " 'A defendant uses "force" if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act.' " (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1024 (*Garcia*); see also *People v. Soto* (2011) 51 Cal.4th 229, 242 [force must be " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself' "].) "[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" are sufficient to support a finding that an act was committed by means of force. (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.)

With respect to count 7 (§ 289, subd. (a)(1)(A)), K.S. testified she used her elbow to push Ferris away and told him to stop. Ferris instead continued pulling her thigh towards him, and physically pulled K.S. onto his lap against her will. As Ferris penetrated her, she told him to stop and that he was hurting her. The jury could have reasonably concluded from this evidence that Ferris used "force" as defined under section 289.

Ferris argues he did not use force because his acts did not "restrain or immobilize" K.S. Ferris does not cite any authority for his suggestion that a victim must be fully immobilized by the perpetrator. Indeed, conduct similar to Ferris's has been found to constitute "force." (See, e.g., *People v. Bolander* (1994) 23 Cal.App.4th 155, 159 ["[D]efendant's acts of inhibiting [victim] from pulling [her] shorts back up, bending [victim]

8

over, and pulling [victim] towards [her] constitute[d] force"]; *People v. Bergschneider* (1989) 211 Cal.App.3d 144, 153 [defendant's "acts in pushing aside [victim's] hands constituted force greater than that necessary to accomplish the act of intercourse itself"].)

2. *Count 10*

With respect to count 10 (§ 289, subd. (a)(1)(A)), K.S. testified Ferris "pushed" or "leaned" her up against the couch before penetrating her anus, estimating the force used as a 5 out of 10.[2] The jury could have reasonably concluded this constituted use of force separate from the penetration itself and that it was sufficient to overcome her will.

Again, we reject Ferris's unsupported claim that defendant's use of force must successfully immobilize the victim. It is sufficient that the defendant overcame the victim's will using force " 'other than . . . the physical contact which is inherent in the prohibited act.' " (*Garcia, supra*, 247 Cal.App.4th at p. 1024.)

3. *Count 13*

With respect to count 13 (§ 289, subd. (a)(1)(A)), K.S. testified that Ferris was sitting next to her, blowing smoke in her face repeatedly, and then put his finger in her anus against her will. Although there is limited direct evidence as to how Ferris conducted this assault, we find sufficient evidence from which a jury could conclude the assault was committed by means of "fear of immediate and unlawful bodily injury." (§ 289, subd. (a)(1)(C).)

---

2 Although Ferris calls this interpretation of the testimony "incorrect[]," he fails to support his assertion or explain what other interpretation would be warranted.

9

The jury was instructed, "An act is *accomplished by fear* if the other person is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it." (CALCRIM No. 1045.) "[T]he element of fear of immediate and unlawful bodily injury has two components, one subjective and one objective." (*People v. Iniguez* (1994) 7 Cal.4th 847, 856 (*Iniguez*).)

"The subjective component asks whether a victim genuinely entertained a fear of immediate and unlawful bodily injury sufficient to induce her to submit . . . against her will. In order to satisfy this component, the extent or seriousness of the injury feared is immaterial." (*Iniguez*, *supra*, 7 Cal.4th at p. 856.) K.S. testified she was increasingly scared of Ferris as the assaults continued. She testified she was not scared during the first assault, she was "a little" scared during the second, and she was "scared" during the third. She also testified she was afraid of Ferris in general after the fourth assault, and would hide in her bedroom when he came over. There was, thus, sufficient evidence from which the jury could have inferred that K.S. subjectively experienced fear during this assault.

The jury could have specifically concluded she was afraid of "immediate and unlawful bodily injury." (See CALCRIM No. 1045.) During prior assaults, Ferris demonstrated indifference to K.S.'s resistance and her stated pain. He had previously used force against her, ignoring verbal and physical demands that he stop. Although she told Ferris that his attempt to put his finger in her vaginal canal "hurt really bad," he persisted. This evidence reasonably supports that she was afraid of bodily injury.

10

"[T]he objective component . . . asks whether the victim's fear was reasonable under the circumstances, or, if unreasonable, whether the perpetrator knew of the victim's subjective fear and took advantage of it." (*Iniguez, supra*, 7 Cal.4th at p. 857.) In light of his prior uses of force, the jury could reasonably conclude that, whether or not he used force on this occasion, there was reason for K.S. to fear he would do so. In addition, Ferris was an adult and a close family friend, who repeatedly assaulted her in her own home. (See *People v. Montero* (1986) 185 Cal.App.3d 415, 425 (*Montero*) ["tender age" of teenage victim and "the position of apparent authority held by" the partner of victim's mother supported finding of fear]; cf. *Iniguez*, at p. 858 [evidence of objective fear included that defendant "weighed twice as much as" the adult victim and assaulted her "in the home of a close friend, thus violating the victim's enhanced level of security and privacy"].) Despite being told about the abuse, the trusted adults in her life apparently did nothing to protect her from continued assaults. (See *Montero*, at p. 426 [citing "the ongoing and continuous exploitation of a resisting and defenseless" victim as factor supporting fear].) In these circumstances, the jury could have concluded it was reasonable for K.S. to fear bodily injury in connection with this assault.

Ferris cites *People v. Jeff* (1988) 204 Cal.App.3d 309, 329 (*Jeff*), in which the court found insufficient evidence of fear because, although the child victim "said she was afraid to refuse defendant [his] sexual demands, she did not know, or at least could not articulate, what it was she feared."[3] The Supreme Court has since clarified that " '[f]ear' may be inferred from

---

[3] The basis for this conclusion is unclear, as the opinion also states, "[The victim] said she was afraid defendant *might hurt her* or do something to her parents if she did not comply. However, she had no idea what he might do." (*Jeff, supra*, 204 Cal.App.3d at p. 327, italics added.)

the circumstances despite even superficially contrary testimony of the victim." (*Iniguez, supra*, 7 Cal.4th at p. 857.)

To the extent *Jeff* might suggest that something more is required to establish fear, we do not find it persuasive. Among other things, the majority opinion appears to improperly discount that the defendant was in a position of significant authority over the very young niece he molested. (Compare *Jeff, supra*, 204 Cal.App.3d at pp. 314, 329 [uncle "helped raise [victim] and bring her up like one of his own children"] with *Montero, supra*, 185 Cal.App.3d at p. 425 [finding evidence of fear because defendant was mother's partner and victim was 13, 14 and 16 at the time of the assaults].) *Jeff* also over emphasizes the lack of overt threats to the victim. (Compare *Jeff, supra*, 204 Cal.App.3d at p. 329 with *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1074 ["Even if defendant never expressly threatened Jane Doe, the jury was entitled to consider the totality of the evidence in assessing menace and had substantial evidence to conclude there was an implied threat that defendant would hurt Jane Doe if she resisted"].) As observed by the dissent in *Jeff*, "A six-year-old victim could readily have considered her uncle's directions to her while he was babysitting her in her grandmother's home were authoritative and, under all of the circumstances of this case, that resistance would have been useless and likely to result in bodily injury to her, her mother or her stepfather." (*Jeff*, at p. 345 (dis. opn. of Hamlin, J.).)

**B.** ***Lesser Included Offense Instruction on Counts 6 and 7***

"[A] trial court must instruct the jury on a lesser included offense, whether or not the defendant so requests, whenever evidence that the defendant is guilty of only the lesser offense is substantial enough to merit consideration by the jury." (*People v. Choyce* (2025) 18 Cal.5th 86, 104.)

12

Ferris argues that because "there was evidence Ferris tried to penetrate [K.S.'s] vagina but was unsuccessful, the trial court was obligated to . . . instruct[] the jury on the lesser included offense of attempted penetration by a foreign object."

For purposes of section 289, " '[s]exual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (*Id.*, subd. (k)(1).) Courts have held this definition includes "penetration of the labia majora." (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1364, 1371 (*Quintana*); see *People v. Martinez* (2024) 105 Cal.App.5th 178, 192; *People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097.) As Ferris concedes, substantial evidence shows that he put his finger inside of K.S.'s labia. Regardless of his inability to penetrate K.S.'s vagina, the evidence amply supports a completed act of penetration within the meaning of the statute.

Ferris attempts to distinguish *Quintana* by arguing "the evidence did not necessarily mean [Ferris] made contact with genitalia inside the exterior of the labia majora." We question the relevance of this purported distinction, as the plain language of the statute does not require "contact" with any genitalia following penetration of a genital opening. (§ 289, subd. (k)(1).) In any event, the opening of the vaginal canal, which Ferris necessarily "made contact with" by attempting to penetrate, is inside of the labia majora. (See *Quintana*, *supra*, 89 Cal.App.4th at p. 1371 [discussing anatomical terms].)

13

**C.** *Consecutive Sentences*

Ferris argues the trial court improperly imposed a consecutive sentence on counts 7, 10, 13, and 14. In his opening brief, he claims the court erred by treating count 14 as a violent sex offense and imposed consecutive sentences under section 667.6, subdivision (c) or (d). In his reply brief, he argues that even if the court did not erroneously sentence count 14 under section 667.6, it erred by "making the violent sex offenses a principal term and treating the nonviolent felony offense as a subordinate term."

This issue involves the interplay of two different felony sentencing statutes. Under section 1170.1, subdivision (a), when a defendant is convicted of two or more felonies and a court elects to impose consecutive sentences,

> "[t]he principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses." (*Ibid.*)

While section 1170.1, subdivision (a) directs courts to impose one-third of the term for consecutive felony sentences, section 667.6 authorizes the imposition of *full*, consecutive sentences for certain enumerated sex offenses, including penetration in violation of section 289, subdivision (a). Section 667.6, subdivision (c) provides:

14

> "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. . . . If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1." (*Ibid.*)

Thus, under section 667.6, subdivision (c), if a defendant is convicted of qualifying sex offenses involving "the same victim on the same occasion" in addition to other felonies, a trial court *may* impose full term, consecutive sentences for each sex offense and sentence the remaining offenses in accordance with section 1170.1, subdivision (a). (See *People v. Belmontes* (1983) 34 Cal.3d 335, 345 (*Belmontes*).)

Section 667.6, subdivision (d), provides, "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions." Thus, where (as here) a defendant is convicted of qualifying sex offenses involving "the same victim on separate occasions" and other felonies, a trial court *must* impose full term, consecutive sentences for each sex offense and sentence the remaining offenses in accordance section 1170.1, subdivision (a). (See *People v. Pelayo* (1999) 69 Cal.App.4th 115, 119 (*Pelayo*).)

While the trial court specifically referred to counts 7, 10, and 13 as "the 667.6 counts," the record is not entirely clear as to whether it imposed consecutive sentences as a matter of discretion under subdivision (c) or as

15

required under subdivision (d).[4] Ferris agreed in the trial court that subdivision (d) applied, stating, "Under PC 667.6(d), imposition of a full, consecutive term is mandatory regarding Ct. 7, 10 and 13, the violations of PC 289(a)(1)(C)." As each of the counts concern separate assaults occurring on different dates, this hardly seems debatable.

In any event, there is no basis to believe the court found count 14 a qualifying offense under section 667.6, subdivision (e). After announcing the sentences on counts 7, 10, and 13, the court said:

> "Count 14 is the Health and Safety Code violation. He will receive a midterm of four years on that case to run consecutive. It would appear that this clearly is a separate crime involving the same victim and done in conjunction with a series of sexual degradation acts."

This statement does not suggest the court sentenced count 14 under section 667.6. Rather, it appears the trial court correctly sentenced qualifying counts under section 667.6 and the remaining counts, including count 14, under section 1170.1.

In his reply brief, Ferris claims the court erred by treating one of the section 667.6 sentences as a principal term and the count 14 sentence as a subordinate term. At the sentencing hearing, defense counsel argued the court had to impose "a principal term within the 1170.1 sentence that the

---

4    To the extent Ferris argues in his reply brief that the trial court erred by failing to state its reasons for imposing consecutive sentences under section 667.6, this argument is forfeited. Ferris both failed to object in the trial court and failed to raise this argument in his opening brief on appeal. (See, e.g., *People v. Mattson* (1990) 50 Cal.3d 826, 854 [To preserve an issue for appeal, an objection must be sufficient "to enable the court to make an informed ruling on the motion or objection"]; *People v. Scott* (1994) 9 Cal.4th 331, 353 [defendant forfeits "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" by failing to object].)

16

667.6, subdivisions (c) and (d) sentences run consecutive to," to which the court responded, "I don't disagree with your analysis overall." Nonetheless, the court described the sentence on count 14 as "consecutive," and the abstract of judgment reflects it is a "consecutive full term," apparently treating count 7 as the principal term.

The treatment in the abstract of judgment seems to be an error, as sentences under section 667.6 must be calculated separately from sentences under section 1170.1. (See § 667.6, subd. (c) ["The term [imposed under this provision] shall not be included in any determination pursuant to Section 1170.1"]; *Belmontes*, *supra*, 34 Cal.3d at p. 346 ["computations under sections 1170.1 and 667.6, subdivision (c) are to be done separately"]; *Pelayo*, *supra*, 69 Cal.App.4th at p. 124 [Under section 667, subdivision (d), "when a defendant is convicted of both violent sex offenses and crimes to which section 1170.1 applies, the sentences for the violent sex offenses must be calculated separately and then added to the terms for the other offenses as calculated under section 1170.1"].) In the circumstances of this case, however, it is only a technical error that could make no difference to Ferris's sentence. Treating the sentence on count 14 as a principal term rather than a term subordinate to count 7 still results in a full term sentence on both counts. (See § 1170.1, subd. (a).) Nor does it affect any other subordinate term, all of which were stayed or ordered to run concurrently. Because it appears the trial court agreed there must be a principal offense under section 1170.1, and because this is legally required, we will direct that the abstract of judgment be amended to reflect that count 14 is a principal term under 1170.1.

## DISPOSITION

The clerk of the superior court is directed to amend the abstract of judgment to reflect that the sentence on count 14 is a principal term and forward a certified copy to the Department of Corrections.  As so modified, the judgment is affirmed.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.