[No. B116693. Second Dist., Div. Six. Jan. 12, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN MANUEL PELAYO et al., Defendants and Appellants.

**COUNSEL**

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant Juan Manuel Pelayo.

Shawn O'Laughlin, under appointment by the Court of Appeal, for Defendant and Appellant Hilario B. Pelayo.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BURKE, J.*** —Juan Manuel Pelayo and Hilario B. Pelayo appeal judgments of conviction of committing sexual offenses against two children.[1] Juan asserts the evidence is insufficient to support his conviction of rape with a foreign object. Hilario contends that excluding certain evidence and prohibiting references to newspaper articles in closing argument denied him a fair trial. The People contend the trial court erred in the calculation of the sentences imposed upon appellants. We affirm the judgments and remand for resentencing.

### PROCEDURAL HISTORY

Appellants were charged with the crime of committing lewd acts on two children under fourteen years old, Nelida and Amber. (Pen. Code, § 288, subd. (a).)[2] They were also charged with acting in concert to rape Nelida with a foreign object (§§ 264.1, 289) and with acting in concert to forcibly rape Amber. (§§ 261, subd. (a)(2), 264.1.)

The jury found appellants guilty of committing lewd acts upon Amber and Nelida and of raping Nelida with a foreign object while acting in concert and of forcibly raping Amber while acting in concert. Appellants were each sentenced to prison for 18 years.

### FACTS

Amber and Nelida were 12 and 10 years old when they became friends at Harding Elementary School. In the 1992-1993 school year, Amber's parents arranged for Nelida's mother to take care of Amber after school until they could pick her up after work.

Nelida's family shared their four-bedroom home with Nelida's aunt and uncle and their children. Appellants joined these two families in about September 1992 and lived in the garage. They were 19 and 21 when the events occurred that led to their convictions.

In November 1992, appellants went into Nelida's bedroom when she and Amber were doing their homework and Nelida's younger sisters were out of the room. Appellants asked Nelida and Amber to give them back rubs and

---

*Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]We sometimes refer to appellants by their first names for reader clarity only.

[2]All statutory references are to the Penal Code unless otherwise stated.

they complied. Similar encounters continued for two or three weeks. Appellants then began to molest the children and continued to do so two or three times per week through December 1992. They usually entered Nelida's room together and locked the door, although on some occasions one would enter as the other left. If the victims tried to leave, one of the appellants blocked the door. They made lewd statements about genitalia and sexual activity and told the victims that they wanted to have sexual intercourse with them. They fondled the children and placed the victims' hands on their penises. On one occasion, Hilario put his finger in Nelida's vagina.

In early 1993, Amber spent a night at Nelida's home. While the victims slept, appellants entered their bedroom, began molesting them there and then dragged them to the garage where they continued to abuse them. The victims escaped, ran back to Nelida's room and locked the door.

On another occasion in 1993, Amber and Nelida were alone in Nelida's bedroom doing their homework. Nelida left to use the bathroom, and when she was gone, appellants entered the bedroom and locked the door. One of them blocked the door, and when Amber tried to escape through a window, appellants dragged her back into the room. She was forcibly raped by both appellants.

Amber and Nelida asked appellants many times to stop molesting them and threatened to tell others about the attacks. Appellants made the children believe that they would be blamed for the attacks if anyone were told what happened. The girls said they did not tell their parents or others because they were afraid and ashamed.

Amber disclosed the attacks to her mother about two years later. Nelida confirmed the attacks soon after Amber described them to her mother and the police.

### SUFFICIENCY OF THE EVIDENCE

 Juan challenges his conviction for rape with a foreign object in concert as lacking evidentiary support. He asserts the evidence did not establish he was acting in concert with Hilario when Hilario inserted his finger into Nelida's vagina. In considering this challenge, we review the facts, and reasonable inferences to be drawn therefrom, in the light most favorable to the judgment. (*People* v. *Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

Juan's argument proceeds from the premise that Hilario was the only person who digitally raped Nelida and that the evidence was insufficient to establish that he aided and abetted Hilario in this crime. We

disagree. The evidence and the reasonable inferences that can be drawn therefrom show that the digital penetration of Nelida was accomplished by a common plan developed and executed by both appellants. Appellants facilitated Hilario's digital penetration by locking the bedroom door and blocking the victims' means of escape. They also aided and abetted each other's sexual abuse by threatening and intimidating Amber and Nelida so they would not disclose the crimes. Whether Juan was aware that Hilario digitally penetrated Nelida's vagina, and whether he was otherwise occupied with Amber at the time, is irrelevant. Juan's actions aided and abetted Hilario.

One who aids and abets a crime may be convicted for any natural or probable consequence of the act that was encouraged or facilitated. (*People* v. *Villa* (1957) 156 Cal.App.2d 128, 134 [318 P.2d 828].) A person can be convicted of an offense even if he is not in the room when the crime occurs. (*People* v. *Lopez* (1981) 116 Cal.App.3d 882, 885-886 [172 Cal.Rptr. 374].) The evidence is sufficient to support Juan's conviction of the crime charged in count 3.

### SCHOOL RECORDS

Hilario argues the trial court erred by excluding Amber's school records. We disagree. The Psychological Services Department of the Los Angeles Unified School District maintained records concerning Amber. They were offered by Hilario to contradict Amber's testimony that her grades suffered because of appellants' crimes. They were also offered to rebut testimony that Amber's personality changed during the attacks to depressed, sullen and mean. The records included reports and observations by Amber's teachers and others about her progress in school from kindergarten to fifth grade. They also included test results, teaching recommendations, and conflicting observations about her personality, behavior and learning disabilities.

Evidence Code section 352 gives the court discretion to exclude evidence that may be time-consuming, confusing or misleading. The trial court weighed the relevance of the records and their probative value against the risk they could be misconstrued. It concluded the records were too extensive and unduly time-consuming and they could confuse or mislead the jury. These risks were determined to outweigh any probative value the records might have.

Hilario argues that the records should have been received because this was a close case that turned on Amber's credibility. He recited a number of examples of inconsistencies between the testimony of Amber and other witnesses, and argued the factual impossibility of some of the events recalled

by her. The jury considered these inconsistencies and other exculpatory evidence but nevertheless found appellant guilty. It is highly unlikely that evidence Amber had trouble in school before she was molested and raped, or that she exaggerated its effect on her grades and behavior in school, would have altered the outcome of this trial.

The records were extensive and contained lengthy, differing opinions about the nature of her learning disability and personality. The records did not specifically contradict any fundamental or critical evidence introduced by the prosecution. The trial court's decision to exclude the records was not arbitrary or capricious and was proper. (*People* v. *Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79].)

### REFERENCE TO NEWSPAPER ARTICLES

■ Hilario also complains that the court improperly restricted his counsel's closing argument by prohibiting reference to newspaper articles about a person who was acquitted of sex crimes against children when it was discovered the stories were fabricated by the children. We disagree.

The trial court's discretionary decision to prohibit reference to another trial involving different facts was not erroneous as a matter of law. In *People* v. *Mendoza* (1974) 37 Cal.App.3d 717 [112 Cal.Rptr. 565], the defendant's attorney wished to read substantially similar newspaper articles to the jury. The court concluded that summation must be based upon the evidence in the case. "Counsel may refer the jury to . . . common experience, history, or literature [citation], but he may not dwell on the particular facts of unrelated, unsubstantiated cases. . . . [T]he court properly denied defense counsel license to read newspaper clippings about unrelated specific crimes, hearsay material which could only confuse the jury with irrelevant facts." (*Id.*, at p. 725.)

### SENTENCING

■ The People contend that elements of the trial court's 18-year sentence were unauthorized and should be corrected. We agree. ■ Although the People did not file a notice of appeal, an unauthorized sentence may be corrected at any time. (*People* v. *Dotson* (1997) 16 Cal.4th 547, 554, fn. 6 [66 Cal.Rptr.2d 423, 941 P.2d 56]; *People* v. *Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Crooks* (1997) 55 Cal.App.4th 797, 810-811 [64 Cal.Rptr.2d 236].)

 Section 1170.1 provides the general formula for determining consecutive terms of imprisonment for persons convicted of two or more felonies. A principal term is selected and subordinate terms and enhancements are added to it to produce an aggregate term of imprisonment. The principal term consists of the greatest term of imprisonment imposed for any of the convictions. Subordinate terms for nonviolent felonies are one-third of the middle term for each felony, not to exceed five years; for violent felonies, it is one-third of the middle term plus one-third of all enhancements. For a violation of listed sex crimes, the number of enhancements that may be imposed is unlimited. Each enhancement must be a full and separately served enhancement and may not be merged with any term or enhancement. (§ 1170.1, subd. (h).)

Violent sex crimes are treated differently. The Legislature enacted section 667.6 in 1979 to significantly increase prison terms for persons convicted of certain violent sex offenses. (Stats. 1979, ch. 944, § 10, p. 3258.) Section 667.6, subdivisions (c) and (d) addresses the terms of imprisonment for 10 listed sex crimes commonly referred to as "violent sex crimes." Appellants' convictions for forcible rape in concert with a foreign object and forcible rape in concert are among the enumerated offenses. Their convictions for lewd conduct with a child under 14 years of age are not.

Appellants were each sentenced to a total of 18 years in prison. The trial court imposed a middle term of seven years for appellants' convictions for rape with a foreign object in concert (§§ 261, 264.1, count 3) and a seven-year middle term for rape in concert (§§ 264.1, 289, count 4). Two subordinate one-third middle terms of two years each were imposed for their convictions for lewd conduct (§ 288, subd. (a), counts 1 and 2).

The trial court said it was imposing the sentences for counts 3 and 4 pursuant to section 667.6, subdivision (d), and that it was imposing the sentences for counts 1 and 2 under section 1170.1. But by treating both of the nonviolent sex offenses as subordinate counts under the one-third the middle term rule of section 1170.1, the court effectively made one of the violent sex offenses a principal term under section 1170.1. This is not authorized by section 667.6, subdivision (d).

Section 667.6, subdivision (c) provides that if a person is convicted of a violent sex offense against a single victim on one occasion, the trial court may, in its discretion, impose a full, separate and consecutive sentence for such an offense. Alternatively, it may sentence the defendant more leniently in the manner prescribed by section 1170.1. (*People* v. *Jones* (1988) 46 Cal.3d 585, 593 [250 Cal.Rptr. 635, 758 P.2d 1165]; *People* v. *Belmontes*

(1983) 34 Cal.3d 335, 346 [193 Cal.Rptr. 882, 667 P.2d 686].) Subdivision (d) removes the trial court's discretion to impose a more lenient sentence under section 1170.1 where two or more violent sex crimes are committed against more than one victim or where they are committed against the same victim on more than one occasion. In such an instance, the defendant must serve a full, separate and consecutive sentence for each conviction of an enumerated violent sex offense. (§ 667.6, subd. (d); *Jones, supra,* at p. 595; *People* v. *Reeder* (1984) 152 Cal.App.3d 900, 911 [200 Cal.Rptr. 479].) Further, the term imposed under section 667.6, subdivision (d) "shall not be included in any determination pursuant to Section 1170.1." Thus, when a defendant is convicted of both violent sex offenses and crimes to which section 1170.1 applies, the sentences for the violent sex offenses must be calculated separately and then added to the terms for the other offenses as calculated under section 1170.1. The trial court erred by making both nonviolent sex offenses subordinate counts and thereby effectively merging one of the section 667.6 offenses into a section 1170.1 term.

Appellants argue that *Belmontes* gives the trial court discretion, even for convictions governed by section 667.6, subdivision (d), to designate one of the violent sex offense convictions as a principal term and to treat other convictions as subordinate to it. We disagree. Nothing in *Belmontes* makes this point.

*Belmontes* resolves two questions about the application of section 667.6, subdivision (c). First, it held the trial court has discretion to choose between section 1170.1 and section 667.6, subdivision (c) in sentencing a defendant convicted of a violent sex offense and another felony. Second, the court held that in exercising its discretion, the trial court is not required to designate a sex offense with the longest term as the principal term. Such a conviction may be treated under section 667.6, subdivision (c), given a full consecutive term and not considered in any other sentence determined pursuant to section 1170.1. On the other hand, section 1170.1 could be selected as the sentencing formula for a conviction of a sex offense enumerated in section 667.6, subdivision (c). If this approach is taken, this count could be either the principal term or a one-third subordinate term to a longer nonsex offense. Finally, as *Belmontes* noted, the trial court "may properly designate the longest nonsex offense as the principal term and may treat all of the sex offenses under section 667.6, subdivision (c)." (*People* v. *Belmontes, supra,* 34 Cal.3d at p. 346.) These options exist, however, only because section 667.6, subdivision (c) specifically gives the trial court this discretion.

Section 667.6, subdivision (d) does not permit any discretion in sentencing a person convicted of committing violent sex offenses against more than

one victim or against the same victim on more than one occasion. The Legislature has declared that these serious crimes demand harsher punishment. Full, separate and consecutive sentences must be served for each conviction. Further, a person subject to section 667.6, subdivision (d) must be sentenced in a manner that does not dilute the impact of full, consecutive terms of imprisonment. The statute requires that the prison term imposed "shall not be included in any determination pursuant to Section 1170.1." Thus, it may not be used to reduce the term of any other conviction. The computations under sections 1170.1 and 667.6, subdivision (d) must always be done separately and the total of the section 667.6, subdivision (d) sentences added to any sentence computed independently under section 1170.1.

Here the lewd conduct convictions on counts 1 and 2 (§ 288, subd. (a)) are not listed in section 667.6 and are therefore governed by the sentencing formula prescribed by section 1170.1. The crimes charged in counts 3 and 4 (§§ 261, 264.1, 289) are violent sex crimes committed against more than one victim and are governed by section 667.6, subdivision (d). Because counts 3 and 4 are governed by section 667.6, subdivision (d), they may not be used as components of a term calculated under section 1170.1, either as a principal term or as a subordinate term.

On resentencing, the trial court should calculate the appropriate terms for counts 1 and 2 under section 1170.1, making the necessary discretionary choices concerning the length of the principal term (lower, middle, upper) and consecutive versus concurrent sentences. The terms selected should be added to the full term, consecutive sentences imposed for counts 3 and 4.

The matters are remanded to the trial court for resentencing. In all other respects, the judgments are affirmed.

Yegan, Acting P. J., and Coffee, J., concurred.

The petition of appellant Juan Manuel Pelayo for review by the Supreme Court was denied April 14, 1999.