Filed 1/21/16  P. v. Sanchez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDRE WIL SANCHEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B259082<br>(Super. Ct. No. 2012018177)<br>(Ventura County) |

        Andre Wil Sanchez appeals a judgment following conviction of four counts of commission of a lewd act upon a child, and two counts of commission of aggravated sexual assault upon a child, with findings that Sanchez engaged in substantial sexual conduct with victims under the ages of 11 or 14 years; he committed sexual offenses against multiple victims; and the prosecution was permissible despite the expiration of the statute of limitations.  (Pen. Code, §§ 288, subd. (a), 269, subd. (a)(3), (5), 1203.066, subd. (a)(8), 667.61, subds. (b) & (e)(4), 803, subd. (f).)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

        Sanchez is the uncle of A., An., and V., all siblings in the B. family. During the time of the commission of the charged sexual offenses, Sanchez lived with or visited the children.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

*Sexual Offenses Committed Against A. B.*

*(Counts 2, 3, & 4.)*

A. was 15 years old at the time of trial. He testified that Sanchez had sodomized him on more than one occasion but he did not recall the details of every instance. He recalled two specific incidents. When he was five years old, he lived with his family. including Sanchez, at a Ventura motel. One day he was alone with his younger brother and Sanchez. Sanchez threw him on the bed, rubbed his buttocks, and then sodomized him.

When A. was eight years old, he lived in Port Hueneme. During one evening, Sanchez entered A.'s bedroom, pulled him from the top bunk bed, placed him on the lower bed, rubbed his buttocks, and then sodomized him. A.'s grandmother (Sanchez's mother) entered the bedroom and asked what was happening. Sanchez had replaced A.'s clothing by then and replied that he was saying goodnight to A. His grandmother then asked A. what had occurred; he replied, "Nothing."

For many years, A. did not report the sexual abuse to anyone. He stated that he was "scared that nobody would believe [him]." When A. was 10 or 11 years old, he reluctantly informed his mother of the sexual abuse in response to her questions. Later, V. and a family friend asked A. to explain burns and cuts on his body. They inquired if he mutilated himself due to Sanchez's sexual abuse. A. cried and confirmed that the sexual abuse was the reason for his self-inflicted wounds.

*Sexual Offense Against An. B.*

*(Count 1.)*

An. was 14 years old at the time of trial. He testified that when he was between five and seven years old, he lived with his family, including Sanchez, in an apartment complex in Oxnard. One evening, Sanchez entered the bedroom and removed An.'s pants. Sanchez then placed his penis against An.'s anus. After a while, Sanchez stopped and replaced An.'s pants. Several years later, An. reported the abuse to his grandmother and, later, his mother. At trial, An. insisted that the sexual assault occurred and was not a dream.

*Sexual Offenses Against V. B.*

*(Counts 5 & 6.)*

V. was 24 years old at the time of trial. She testified that Sanchez molested her on more than one occasion. She specifically recalled two instances where they played a game Sanchez described as "eat tummy." Sanchez would remove V.'s clothing, touch, lick, and rub his penis against her vagina. The incidents occurred when she was three or four years old. In one incident, Sanchez molested her in her bedroom and, in another incident, in a backyard shed.

The molestations ceased when V.'s parents separated and she moved away. Many years later, V. informed her fiancé of the molestations. She also confronted Sanchez, who apologized to her and stated that he had repented for his behavior. Sanchez "dropped down to his knees" and asked forgiveness, offering "to take his own life."

On May 16, 2012, V. made a pretextual telephone call to Sanchez that was monitored and recorded by Oxnard police officers. During the call, Sanchez admitted that he molested V. and acknowledged that he had apologized to her for the sexual abuse. Sanchez denied molesting A. and An., however. At trial, the prosecutor played the recording of the telephone call.

On May 18, 2012, Oxnard Police Detective Ohad Katzman interviewed Sanchez in a recorded interview. Sanchez admitted touching and orally copulating V.'s vagina. Sanchez initially denied molesting A. or An. Later, he admitted rubbing his penis against An.'s buttocks, and placing his finger and penis in A.'s anus. Sanchez dictated an apology letter to V., A., and An., stating that he apologized to V. for the incidents he committed against her, to A. for fondling his buttocks, and to An. for touching his buttocks and disrespecting his private areas. At trial, the prosecutor played the recording of the interview.

*Uncharged Prior Sexual Offense*

When she was eight years old, Breanna S. lived with her family in a Ventura motel. Sanchez also lived at the motel. One afternoon, Breanna S. watched

3

television with Sanchez in his room. As they sat on his bed, Sanchez touched and licked her vagina. Eventually, Breanna's sister and another friend saw Sanchez kiss Breanna's back and hand. The friend informed her mother who then reported the incident. Breanna stated to police officers that Sanchez only kissed her back and hand. On July 3, 2002, Sanchez was convicted of misdemeanor child molestation or annoyance.

Doctor Jody Ward, a clinical and forensic psychologist, testified regarding the child sexual abuse accommodation syndrome. Ward stated that many child sexual assault victims exhibit syndrome behaviors that tend to explain their delay in reporting sexual abuse.

Sanchez testified at trial and denied sexually touching or assaulting the children. He admitted touching V. and Breanna S. but in a nonsexual manner. Sanchez stated that he told the police detective "whatever he want[ed] to hear" in order to end the interview. He also stated that he "was like whatever" to satisfy V. during the pretextual telephone call.

*Verdict and Sentencing*

The jury convicted Sanchez of four counts of commission of a lewd act upon a child, and two counts of commission of aggravated sexual assault upon a child. (§§ 288, subd. (a), 269, subd. (a)(3), (5).) The jury also found that Sanchez engaged in substantial sexual conduct with the victims who were under the ages of 11 or 14 years; he committed sexual offenses against multiple victims; and the prosecution was permissible despite the expiration of the statute of limitations. (§§ 1203.066, subd. (a)(8) 667.61, subds. (b) & (e)(4), 803, subd. (f).)

The trial court sentenced Sanchez to a prison term of 10 years plus 45 years to life. The sentence was comprised of a 15-year-to-life term for count 1, a 15-year-to-life term for count 3, a 15-year-to-life term for count 4, an eight-year upper term for count 5, and a two-year term for count 6. The court imposed but stayed sentence for count 2, pursuant to section 654. The court imposed a $300 restitution fine, a $300 parole revocation restitution fine (stayed), a $240 court security assessment, and a $180 criminal conviction assessment, ordered victim restitution, and awarded Sanchez 932

4

days of presentence custody credit.  (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd, (a); Gov. Code, § 70373.)

Sanchez appeals and contends that the trial court erred by:  1) permitting A. to testify that he cut himself as a result of sexual abuse; 2) instructing with CALCRIM No. 1110; and 3) restricting defense argument regarding instances of false conviction.

*DISCUSSION*

*I.*

Sanchez argues that the trial court erred by permitting A.'s testimony that he inflicted cut and burn wounds upon himself in response to the sexual assaults. Sanchez asserts that the evidence lacked expert witness foundation and was therefore irrelevant and unduly prejudicial pursuant to Evidence Code section 352.  He contends the error denied him due process of law pursuant to the United States and California Constitutions and compels reversal pursuant to any standard of review.

For several reasons, we reject Sanchez's contention.

First, although Sanchez objected to A.'s testimony regarding self-mutilation on the ground of relevance, he did not object on the ground of lack of expert witness foundation.  Thus, he has forfeited the issue on appeal.  (*People v. Seaton* (2001) 26 Cal.4th 598, 642-643 [forfeiture of issue where defendant did not object upon grounds of lack of adequate scientific foundation].)  Sanchez's objection regarding relevance does not satisfy the rule requiring a "specific objection" to enable the trial court to consider excluding the evidence and to allow the evidence proponent to lay additional foundation. (*People v. Partida* (2005) 37 Cal.4th 428, 434-435 [discussing reasons for specific objection].)

Second, A.'s brief testimony regarding his self-mutilation was relevant to explain his delay in reporting the sexual abuse and, ultimately, to his credibility.  A. testified: "[N]obody wants to think about this. . . .  [S]ome people kill themselves over it. I almost did . . . .  I really was hurting myself.  Like, I was cutting my arms. . . . Like, I would cut my arms because I would feel like it was my fault . . . .  Like, that what he did to me was, like, my fault, like I did something. . . .  I would cut myself and hurt

5

myself. . . . If I wanted to lie, I would lie. I wouldn't be cutting myself for nothing. I wouldn't be feeling depressed for nothing."

A.'s testimony did not concern a subject requiring expert testimony and a necessary foundation therefor. A. explained his state of mind and why he believed he harmed himself. This related to his delay in reporting the abuse and his reluctance to speak of it. The trial court did not abuse its discretion by permitting this evidence. (*People v. Alexander* (2010) 49 Cal.4th 846, 903-904 [general rule of relevant evidence].) Moreover, any undue prejudice did not substantially outweigh the probative value of the evidence. (Evid. Code, § 352; *People v. Suff* (2014) 58 Cal.4th 1013, 1066 ["'A trial court's exercise of discretion under section 352 will be upheld on appeal unless the court abused its discretion, that is, unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner'"].)

*II.*

Sanchez contends that the trial court erred by instructing with CALCRIM No. 1110 ("Lewd or Lascivious Act") regarding the elements of committing lewd and lascivious conduct because the instruction eliminates an element of the offense. Specifically, he asserts that the pattern instruction fails to require that the touching be committed in a lewd manner. Sanchez points out that section 288, subdivision (a) punishes any person "who willfully and lewdly commits any lewd or lascivious act." He argues that the instruction denies his right to a jury trial and to due process of law pursuant to the United States and California Constitutions.

The trial court did not err by instructing with CALCRIM No. 1110 because the instruction is an accurate statement of law and consistent with the decisions of our Supreme Court. (*People v. Shockley* (2013) 58 Cal.4th 400, 404 [section 288 focuses upon defendant's intent to sexually exploit a child rather than the nature of the offending act]; *People v. Martinez* (1995) 11 Cal.4th 434, 444 [same].) "[S]ection 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act." (*Martinez,* at p. 444.)

Section 288 requires a "touching" of the victim and the sexual gratification must be intended at the time of the touching. (*People v. Sigala* (2011) 191 Cal.App.4th 695, 700.) Moreover, the form, manner, or nature of the offending act is not restricted. (*Ibid.*) A lewd or lascivious act can be committed through the victim's clothing and may involve any part of the victim's body. (*Ibid.*) We agree with the analysis set forth in *Sigala*, and conclude that CALCRIM No. 1110 is a correct statement of law.

In any event, the asserted error is harmless beyond a reasonable doubt. (*Neder v. United States* (1999) 527 U.S. 1, 15.) In his police interview, Sanchez admitted the charged touchings, which were unquestionably sexual touchings of the children's genitalia. No evidence exists that the molestations were innocent or were committed without the intent of sexual gratification.

*III.*

Sanchez asserts that the trial court erred by preventing him from arguing that there have been false convictions and later exonerations, such as those achieved by the Innocence Project. He contends that the court's restriction of his summation denied him the right to present a defense and to due process of law, pursuant to the United States and California Constitutions.

The trial court denies a defendant's right to counsel when it seriously limits defense closing argument by precluding reference to an entire theory of defense. (*Conde v. Henry* (9th Cir. 1999) 198 F.3d 734, 739.) Nevertheless, the trial court retains discretion to limit counsel's argument according to the circumstances of each case. Section 1044 provides: "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." Thus, the trial court "may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial." (*Herring v. New York* (1975) 422 U.S. 853, 862.)

Moreover, the trial court may preclude counsel from arguing facts of unrelated, unsubstantiated cases. (*People v. Pelayo* (1999) 69 Cal.App.4th 115, 122 [trial

7

court properly restricted counsel's summation by prohibiting references to newspaper articles concerning children fabricating sex crimes]; *People v. Mendoza* (1974) 37 Cal.App.3d 717, 725 [trial court properly restricted counsel from reading newspaper articles concerning unrelated crimes].)  Thus, a defendant does not have an absolute constitutional right to present closing argument of any kind and scope that he may desire.

The trial court did not abuse its discretion by restricting Sanchez's summation.  The fact that other defendants were wrongfully convicted by other juries faced with different evidence was irrelevant to the jury's task here.  Moreover, Sanchez did argue that the criminal justice system was flawed and had led to gross injustices; the jury should not convict an innocent man; forensic evidence is "the safeguard against a false conviction"; and this prosecution presented "a very, very high risk of an innocent man being convicted."  The court did not impermissibly abridge Sanchez's constitutional right to counsel and to present a defense.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:



YEGAN, J.



PERREN, J.


8

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Blythe J. Leszkay, Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.