Filed 7/10/25  P. v. Negron CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CRISTIAN JOVANY NEGRON, Defendant and Appellant. | G063296 (Super. Ct. No. 22CF3694) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge. Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A.

Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

*       *       *

In 2023, a jury convicted Cristian Jovany Negron (Negron) of forcible rape (Penal Code,[1] § 261, subd. (a)(2); count 1), sodomy by force (§ 286, subd. (c)(2)(A); count 2), forcible oral copulation (§ 287, subd. (c)(2)(A); count 3), and domestic battery with corporal injury (§ 273.5, subd. (a); count 4). The trial court sentenced Negron to the low term of three years on count one, the low term of three years on count two to run consecutively to count one, the low term of three years on count three to run concurrently to count one, and the low term of two years on count four to run consecutively to count one.

On appeal, Negron contends there was insufficient evidence to convict him of forcible rape. He claims the victim willingly engaged in vaginal sexual intercourse and, therefore, consented. Alternatively, he complains the trial court imposed an unauthorized sentence because it could not impose a full term on count four as that sentence was subordinate to count one.

We find no merit to Negron's positions and, therefore, affirm his convictions and sentence.

STATEMENT OF FACTS

The victim was a 30-year-old woman who shared three children with Negron. She met Negron when she was 14 and he was 16. They were in a romantic relationship from the time she turned 15 until July 2022. Although they broke up at various times throughout their relationship, they always remained sexually active.

---

[1] All further statutory references are to the Penal Code.

2

In February 2022, the victim told Negron she did not want to be with him anymore. Although they were no longer together, they remained sexually active. The victim testified they had sex whenever she "asked for it or he asked for it . . . ." One night during that month, the victim had a night out with friends. This upset Negron because she was not answering her phone, returned home late, and was intoxicated. They argued and Negron hit her in the face.

Throughout the course of their relationship, it was not uncommon for them to have "emotional and aggressive sex." They used sex to resolve issues. It was a source "of release, stress, anger, [and] happiness." Even when the victim did not want to have sex with Negron, she would do it to appease him, and he would do the same. The victim stated they were both sexually aggressive and occasionally engaged in anal sex. At times, she would scream and say "'[i]t hurts.'" Sometimes they would role play where she would be submissive, and Negron was allowed to do whatever he wanted to her.

Negron testified and explained that their aggressive sex involved hitting each other, choking each other, having anal sex, name calling, and demeaning each other. The victim told Negron that she liked it when she felt pain. When she was submissive during sex, she did whatever he wanted her to do. She told him she enjoyed it.

In September 2022, the victim started dating someone else; Negron became jealous and controlling when he found out. From September through December, the month of the incident, Negron would often question the victim about people she was seeing. He would question her so frequently that she would sometimes have sex with him just to calm him down.

Negron told the victim he had access to her social media accounts and knew about all her sexual partners. He wanted to make sure he could

check up on her and verify she was not seeing other men. She told him to stop, that she just wanted to coparent with him, that she was afraid of him, and had been afraid of him since the time he hit her.

In the days leading up to the incident, Negron threatened to take the kids away from her because she was not "a fit mother," and she "was sexually active and could have exposed [their children] to an STD." She was afraid he was actually going to do it because he told her he had a lawyer and had everything set up.

On the day of the incident, the victim brought their kids to Negron's apartment to visit him. He told her to bring the outfits she wore for other men, but she told him, "'this is rape.'" She responded that way because she knew he would make her have sex even though she did not want to have sex with him.

When the victim went inside Negron's apartment, they sat in the living room while the kids watched television. Negron started asking her questions about her other partners. He was agitated and breathing heavily as he spoke to her.

The victim tried to leave because she felt uncomfortable. She took the kids and walked out, but Negron ran after her and grabbed one of their children. When they were back inside the apartment, Negron continued questioning the victim and said he wanted her to stop seeing other men. Negron threatened to "expose" the victim at her job. He told her to go to the bedroom, and she complied. The victim knew he wanted her to go to the bedroom for sex because "[e]very time [they] went to [that] room, it was going to be for sex."

When they were in the bedroom, Negron told the victim she "was going to get it today" and she "was going to get what [she] wanted, what [she]

4

deserved." The victim told Negron to stop and that she did not want to have sex with him.

Negron then forced the victim to orally copulate him. She cried and asked why he was doing this; Negron responded: "Do you not understand that there's consequences . . . [for the] fucked up shit you do"? Despite her saying not to, he forced her to have anal sex with him. She was crying and "kept screaming and complaining that [she] was hurting and he needed to stop."

Negron told her, "You're gonna get raped all the time, you know that right"? Negron sodomized the victim until she defecated. When he stopped, the victim ran to the restroom to clean herself. Negron followed her and said they "weren't done." The victim did not ask if she had a choice to return to the bedroom. She "understood [they] weren't done and [she] went to the room." They then had vaginal intercourse. She did not cry or scream like she did prior to going to the bathroom. The victim was on top and faked an orgasm "[b]ecause [she] just wanted to finish." Negron then finished.

When the victim left, she called the domestic violence hotline, but no one answered. She then called 911. When the police arrived, the victim and the officer conducted a covert call with Negron. The victim asked Negron why he raped her, and he responded, "It's your fault you don't learn."

According to Negron, it was an "unspoken rule" between the two of them that if one told the other to go to the bedroom, they were going to give in and "just let whatever happen happened [*sic*]." He stated it was normal for them to use words like "rape" and "force" during sex. Negron did not believe he was raping her because they had sex "exactly like that, the same events, the exact same word over and over again, and she would always tell [him] she liked it."

## DISCUSSION

### I.

### SUBSTANTIAL EVIDENCE SUPPORTS THE FORCIBLE RAPE CONVICTION

Negron argues the victim "consented to the vaginal sex by returning to the bedroom with [him] without opposition, voluntarily taking the 'top' position, and ultimately faking an orgasm to end the sexual encounter before leaving with her children unimpeded." We are not persuaded.

"Rape is an act of sexual intercourse accomplished [as relevant here,] [¶] . . . [¶] . . . against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).) "'[A]gainst one's will' means 'without the consent of the alleged victim.'" (*People v. Lee* (2011) 51 Cal.4th 620, 634, fn. 10.) "'[C]onsent' means positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." (§ 261.6, subd. (a).)

"'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" (*People v. Young* (2005) 34 Cal.4th 1149, 1175.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Maury* (2003) 30 Cal.4th 342, 403, disapproved on other

grounds by *Barnett v. Superior Court* (2010) 50 Cal.4th 890, 901.) "We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*Maury,* at p. 403.)

Here, there is ample evidence from which a rational trier of fact could conclude the victim did not consent to vaginal intercourse. In the time leading up to the incident, Negron was becoming increasingly jealous and controlling of the victim. He also physically assaulted her and threatened to "expose" her at work. In the days leading up to the incident, Negron threatened to take the kids away from the victim claiming she was an unfit mother.

His behavior culminated in the incident when he told the victim she "was going to get . . . what [she] deserved." Negron forced the victim to engage in oral copulation and anal sex—as to which there is no dispute the victim did not consent. Moreover, during the unconsented oral and anal sex, Negron told the victim he was going to rape her "all the time." When the victim ran to the restroom, Negron came in and told her they "weren't done." After the incident, Negron told the victim it was her fault he raped her.

The victim's return to the bedroom, after Negron sexually and violently assaulted her, does not amount to consent. Nor does the fact that she was in the top position during sexual intercourse. Based on the circumstances, these were not acts of the victim's own free will, but, at most, decisions to submit to Negron's sexual demands and assault. "[A] victim's mere submission to an act does not amount to 'actual consent.'" (*People v. Oliver* (2020) 54 Cal.App.5th 1084, 1095.) "[A] victim's decision to submit to an attacker's sexual demands out of fear [or under duress] is not consent [citations] because the decision is not freely and voluntarily made [citation]." (*People v. Giardino* (2000) 82 Cal.App.4th 454, 460, fn. 3.) A victim, who had

just been sexually assaulted need not make any attempts to resist further sexual assault or "communicate their lack of consent." (*People v. Ireland* (2010) 188 Cal.App.4th 328, 338.)

## II.

### THERE WAS NO SENTENCING ERROR

Alternatively, Negron contends the trial court erred in "impos[ing] a full consecutive term on count four . . . ." He argues the trial court was limited to imposing a "one-third the midterm" sentence on count four. We disagree.

When sentencing a defendant who was convicted of multiple felonies to consecutive sentences, a trial court generally must follow section 1170.1. That section provides the default "formula for determining consecutive terms of imprisonment for persons convicted of two or more felonies." (*People v. Pelayo* (1999) 69 Cal.App.4th 115, 123 (*Pelayo*).) The court designates one conviction to represent the "principal term," and the remainder are designated the "subordinate terms." (*Ibid.*) The court sentences the defendant on the principal term to a low, middle, or upper term for the respective crime. (§ 1170.1, subd. (a).) The court then sentences the defendant on the subordinate terms. Subordinate terms are limited to one-third of the middle term of imprisonment prescribed for each remaining felony conviction. (*Ibid.*)

A court need not abide by the sentencing structure of section 1170.1 when sentencing a defendant who has been convicted of certain sex offenses. Section 667.6 provides an alternative sentencing structure when a defendant has been convicted of, as relevant here, forcible rape, forcible oral copulation, and forcible sodomy. (§ 667.6, subd. (e)(1), (4) & (7).) "The Legislature enacted section 667.6 in 1979 to significantly increase prison

8

terms for persons convicted of certain violent sex offenses." (*Pelayo, supra,* 69 Cal.App.4th at p. 123.) Spousal abuse (count 4) in violation of section 273.5, subdivision (a), is not a section 667.6 offense.

When sentencing an offender convicted of section 667.6 sexual offenses, "[i]n lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation . . . ." "If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment . . . . The term shall not be included in any determination pursuant to Section 1170.1." (§ 667.6, subd. (c).) The court also has discretion to run a sentence on a section 667.6 offense concurrent to another section 667.6 sentence. (*People v. Catarino* (2023) 14 Cal.5th 748, 753 [court has "discretion to run the terms concurrently"].) Section 667.6, subdivision (c) "was intended to provide, in the context of violent sex offenders, a discretionary sentencing alternative to the standard consecutive sentencing formula in section 1170.1." (*People v. Jones* (1988) 46 Cal.3d 585, 595 (*Jones*).)

When a defendant stands convicted of section 667.6 offenses as well as a non-section 667.6 offense (here, the spousal abuse conviction), the court has a choice to make at sentencing. It can proceed under section 667.6 and "impose a full, consecutive sentence [for each sexual offense] or, instead, it may apply the standard consecutive sentencing formula in section 1170.1 [for each sexual offense and the spousal abuse conviction]." (*Jones, supra,* 46 Cal.3d at p. 593.)

If the trial court "elect[s] to treat all the sex offenses under section 667.6, subdivision (c), the [nonsex offenses must be] analyzed independently under sections . . . 1170.1." (*People v. Price* (1984) 151 Cal.App.3d 803, 817.) "The computations under sections 1170.1 and

9

667.6, subdivision (c) are to be done separately; the total of the section 667.6 computation would then be added to the section 1170.1 total." (*People v. Belmontes* (1983) 34 Cal.3d 335, 346.)

Here, the trial court sentenced Negron on the section 667.6 sexual offenses pursuant to that sentencing structure. This represented a sentence of three years on count one (forcible rape), three years on count two to run consecutively to count one (sodomy), and three years on count three to run concurrently to count one (forcible oral copulation). This represented a total prison term of six years on the section 667.6 offenses.

For the spousal abuse conviction, the trial court, as it was required to, followed section 1170.1. Because there was only one section 1170.1 offense, it was designated the principal term, and the court sentenced Negron to a low term of two years. Per the sentencing procedures in section 667.6, the court appropriately ran this sentence consecutively to the section 667.6 sentences. (§ 667.6, subd. (c) [section 667.6 offenses are "served consecutively to any other term of imprisonment"].) In this situation, there are no subordinate terms and no obligation to impose a "one-third the midterm" sentence on count four as Negron contends.

Negron counters that the record demonstrates the trial court sentenced him on all counts pursuant to the sentencing structure of section 1170.1. He contends the court designated count one "as the base term and counts two, three, and four as the subordinate terms." However, since the court imposed full-term sentences on each count, as opposed to one-third the mid-term, it is apparent the court did not designate count one as the principal term pursuant to the sentencing structure of section 1170.1.

10

## DISPOSITION

We affirm Negron's convictions and sentence.

SANCHEZ, ACTING P. J.

WE CONCUR:

DELANEY, J.

GOODING, J.