**See Concurring Opinion**

Filed 1/5/24  P. v. Carlton CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080312 |
| v. | (Super.Ct.No. BLF2100187) |
| KENNETH CARLTON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jeffrey Prevost, Judge.

(Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art.

VI, § 6 of the Cal. Const.)  Affirmed as modified.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant

and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Sahar

Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Kenneth Carlton was convicted of six crimes, including four sex crimes committed against his five-year-old granddaughter, Jane Doe. On appeal, he argues that two counts were not supported by sufficient evidence of "force, duress, menace, fear of immediate bodily injury, or violence." He also challenges his sentence and the scope of a criminal protective order. The People correctly concede on a sentencing issue, which we conclude does not require remand, and we find merit in Carlton's challenge to the protective order. However, we reject Carlton's other arguments, including his challenge to the sufficiency of the evidence. We therefore modify the sentence, including the criminal protective order, and otherwise affirm the judgment.[1]

## I. BACKGROUND

Jane Doe was born in 2016. One day in October 2021, her mother went to work and left Doe and her two older brothers with Carlton. One of Doe's brothers—who was 10 years old when he testified at the September 2022 trial—looked out the kitchen window and saw Carlton "pull [Doe's] shirt up and lick at her" "boob." He made up a distraction to get Doe inside, telling her he found one of her toys, and then asked Doe why Carlton did what he saw. As he stated at trial: "She said that grandpa said it's a best friend thing and best friends do it." Doe's brother asked Doe whether anything else happened, "and she said grandpa licked her down there," "[d]own in the private part."

---

[1] Undesignated statutory references are to the Penal Code.

2

At trial, Doe testified that Carlton touched her chest with his tongue. She also said that Carlton put his tongue on her body where she "[g]o[es] to the bathroom." When asked to demonstrate, using a Kleenex box, what Carlton did with her genitals, Doe initially testified that his fingers did not go inside her vagina, but when asked again, she said that they did. Doe also said when Carlton kissed her chest, Carlton pulled her clothes up, and also that she pulled her own clothes up. Doe also said that Carlton took one of Doe's bracelets, took his pants off, and put the bracelet on his penis.

Doe's mother also testified at trial. After she returned from work that day, Doe's brother told her what had happened. She soon talked to Doe, but Doe was scared her mother would be mad at her if she disclosed what happened. As Doe's mother stated: "Jane Doe was scared. She was told not to tell us." She explained: "Jane Doe was scared that myself, my mother, and my sister . . . were going to be mad at her because" Carlton told her she would get in trouble if she said anything. Doe's mother also said that Doe told her that Carlton showed her pornography on his phone.

Three investigative interviews of Carlton were played at trial. In the first, Carlton initially denied Doe's allegations but soon admitted to kissing her "nipple." During the third interview, four days after the first two, Carlton admitted that he "licked her clit" for "less than 15 seconds" and rubbed her genitals with his hands. According to Carlton, he first orally copulated her at his motorhome, and then sometime later that day he kissed or licked her chest outside her home, which was across the street. He also admitted to showing Doe pornography on his phone and placing her bracelet on his penis.

Carlton was charged with two counts of oral copulation or sexual penetration with a child 10 years or younger (§ 288.7, subd. (b), counts 1 and 2), two counts of forcible lewd or lascivious act with a child under 14 years (§ 288, subd. (b)(1), counts 3 and 4), one count of possession of a firearm by a felon (§ 29800, subd. (a)(1), count 5), and one count of possession of ammunition by a prohibited person (§ 30305, subd. (a)(1), count 6). The jury found Carlton guilty as charged on all counts except count 2; on count 2, the jury found Carlton guilty on the lesser offense of attempted sexual penetration with a child 10 years or younger (§§ 664, 288.7, subd. (b)(1)). The trial court sentenced Carlton to an indeterminate term of 15 years to life and a determinate term of 10 years and eight months. At Doe's mother's request, the trial court also imposed a 10-year criminal protective order (§ 136.2) prohibiting Carlton from contacting Doe or her brothers.

## II.  DISCUSSION

Carlton raises four arguments on appeal. First, he argues that there was insufficient evidence of "force, duress, menace, fear of immediate bodily injury, or violence" as required for the lewd and lascivious acts counts, counts 3 and 4. Second, he argues that the sentence in count 2 was improperly imposed as an indeterminate term of seven years to life instead of a determinate term of seven years; the People concede this was error. Third, Carlton argues that the full midterm sentence should not have been imposed in count 5 but rather one-third of the midterm sentence. And fourth, Carlton argues that there is no statutory basis to impose a criminal protective order prohibiting him from contacting Doe's two brothers. As we explain, we agree with the parties as to

4

the conceded issue and with Carlton as to the criminal protective order, but otherwise find the arguments meritless.

*A. Sufficiency of the Evidence*

In reviewing the sufficiency of the evidence, "we must '"review the entire record in the light most favorable to the judgment,"' and then determine whether it contains '"evidence that is reasonable, credible, and of solid value"' such that a reasonable jury could have found the defendant guilty beyond a reasonable doubt." (*People v. Ware* (2022) 14 Cal.5th 151, 167.) We ""'"presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence . . . ' . . . for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'"'" (*Ibid.*)

Here, the evidence was sufficient to show that Carlton committed the lewd and lascivious acts using duress. In this context, duress means "'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.'" (*People v. Leal* (2004) 33 Cal.4th 999, 1004, italics removed; see also § 261, subd. (b)(1).) "The very nature of duress is psychological coercion. A threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress." (*People v. Cochran* (2002) 103

5

Cal.App.4th 8, 15, overruled on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.) In addition, where, as here, "'the defendant is a family member and the victim is young . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress." (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.)

Doe's mother testified that, when she spoke with Doe, Doe was afraid to say anything. According to Doe, Carlton had told her that her mother, grandmother, and aunt would all be "mad at her" if she disclosed what had happened. Considering the consequences a five-year-old child could reasonably be understood to fear, Doe's mother's statements were enough to support a finding of duress. Doe, who hadn't yet been enrolled in school at the time, might not have fully comprehended a threat to "break[] up the family" (*People v. Cochran*, *supra*, 103 Cal.App.4th at p. 15), but she would likely have considered her mother, grandmother, and aunt being angry at her to be a serious consequence, one to avoid. And, based on the testimony, it was Carlton who gave her reason to be fearful by telling her that her family would be mad at her.

Moreover, Carlton was a family member, and Doe was very young. As Doe's mother testified, Carlton was "[i]n a way" like a father figure to Doe, "since she didn't have one in her life." Carlton was also much larger than Doe. He was 5'9" and 150 pounds, whereas Doe was 3'10" and 45.5 pounds. Carlton was thus, through physical stature and familial status, in a "'position of dominance and authority'" over Doe. (*People v. Schulz*, *supra*, 2 Cal.App.4th at p. 1005; see also *People v. Veale* (2008) 160

6

Cal.App.4th 40, 47 ["Additional factors supporting a finding of duress include Brianna's young age when she was molested; the disparity between Brianna and defendant's age and size; and defendant's position of authority in the family"]; *People v. Cochran*, *supra*, 103 Cal.App.4th at p. 16, fn. 6 ["as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present"], overruled on other grounds in *People v. Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12.)

Carlton relies on *People v. Espinoza* (2002) 95 Cal.App.4th 1287, but that case is distinguishable. As this court has noted, "in *Espinoza* the only proffered basis for the victim's fear was that the defendant continued to molest her." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1073; see *Espinoza*, at p. 1321 ["no evidence was introduced to show that [the victim's] fear was based on anything defendant had done other than to continue to molest her"].) By contrast, Doe's fear here was not limited to only the fear of continued molestation. Accordingly, Carlton's relation to Doe and his implied threat of hardship provided sufficient evidence that the acts in counts 3 and 4 were committed by means of duress.[2]

---

[2] In his reply brief and at oral argument, Carlton contended that there was insufficient evidence of duress because it is not clear whether Carlton's statement to Doe (that her family would be "mad at her") was made before or after the lewd acts. An argument made for the first time in a reply brief is deemed waived when (as here) no good cause has been shown for the failure to present it earlier. (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93.) Nevertheless, there was evidence that Carlton engaged in other acts with Doe before the acts forming the basis of counts 3 and 4. In an interview, Carlton admitted showing her pornography and placing her bracelet on his penis on previous days. The jury could infer that the warnings to Doe occurred before

*[footnote continued on next page]*

There was sufficient evidence for a finding of force on count 3 as well. Count 3, which the People stated during its closing argument was based on the "licking or kissing of [Doe's] chest," involved Doe's brother's testimony that he saw Carlton pull Doe's shirt up and Doe's congruent testimony. That evidence was sufficient to show force, as the necessary force need only be "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.'" (*People v. Soto*, *supra*, 51 Cal.4th at p. 242; see also *People v. Morales* (2018) 29 Cal.App.5th 471, 480 ["'an act is forcible if force facilitated the act rather than being merely incidental to the act'"]; *People v. Thomas*, *supra*, 15 Cal.App.5th at pp. 1071-1072 [sufficient evidence of force found where defendant led victim by the hand to the bathroom and positioned her body on the sink; force includes "'the physical movement and positioning of [the victim's] body in accomplishing the act"].) Carlton's argument to the contrary, which relies on Doe's testimony and his own statement during interrogation that it was Doe who lifted her shirt, does not convince us otherwise. Such statements at most create an evidentiary conflict, which is the role of the jury to resolve, not this court in conducting a review for substantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 ["'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination

_____

the charged act, as Carlton would have the same incentive to use the tactic in conjunction with the other activity. Also, apart from the words he used, Carlton's physical stature compared to the girl, and his status as Doe's grandfather, would be sufficient to show duress.

8

depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.'"].) The jury could reasonably have concluded it was Carlton who lifted Doe's shirt and that such force facilitated the lewd act.

*B. Sentence on Count 2*

Carlton argues, and the People concede, that the trial court erred by imposing a sentence of seven years to life on count 2. We agree.[3]

The jury convicted Carlton on count 2 of attempted sexual penetration with a child 10 years or younger (§§ 664, 288.7, subd. (b)(1)). Under section 664, subdivision (a), except for certain attempted murders, "[i]f the crime attempted is . . . one in which the maximum sentence is life imprisonment or death, the person guilty of the attempt shall be punished by imprisonment in the state prison for five, seven, or nine years." Sexual penetration with a child 10 years or younger is punishable by "a term of 15 years to life" (§ 288.7, subd. (b)), so its maximum sentence is life imprisonment. Accordingly, section 664, subdivision (a) applied, and the trial court erred when it sentenced Carlton to an indeterminate term of seven years to life.

At sentencing, the trial court designated count 3 as the principal term and imposed the middle term. It also imposed the middle term for the other counts it believed were subject to determinate sentences, counts 4, 5, and 6. The transcript of the sentencing

---

[3] The sentence on count 2 was stayed under section 654. In addition, although Carlton did not raise the issue at sentencing, "it is well established that the appellate court can correct a legal error resulting in an unauthorized sentence . . . at any time." (*People v. Sanders* (2012) 55 Cal.4th 731, 743, fn. 13.)

hearing gives us no reason to believe that the trial court would have deviated from this pattern and imposed either the lower or upper terms on count 2 had it imposed a determinate sentence instead of an indeterminate one.  Similarly, the People do not seek to prove the upper term on count 2.  Thus, there is no reason to believe that the trial court would have made count 2 the principal term (for which, as noted above, the middle term is seven years) instead of count 3 (for which the middle term is eight years).  (§ 1170.1, subd. (a) ["The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements"].)

We thus decline Carlton's request for a full resentencing and impose a sentence of seven years for attempted sexual penetration with a child 10 years or younger (§§ 664, 288.7, subd. (b)(1)), which we also stay under section 654.  (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473 [modifying the judgment instead of remanding, noting "futility and expense" of "a new sentencing hearing that will not change [a defendant's] actual prison time" and imposing a midterm sentence "because that is undoubtedly the sentence the trial court would have imposed" based on the record].)

## C.  Sentence on Count 5

Carlton next argues that the trial court erred by imposing a full and consecutive sentence on count 5 (possession of a firearm by a felon, § 29800, subd. (a)(1)) instead of one-third of that term under section 1170.1, subd. (a).  He argues that the "principal term" under section 1170.1's sentencing scheme was the sentence imposed for count 3 (forcible

lewd or lascivious act with a child under 14 years, § 288, subd. (b)(1)) and concludes that the sentence for count 5 should have been imposed as a one-third "subordinate" term. (See § 1170.1, subd. (a) ["The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment"].)

Carlton is incorrect. "[W]hen a defendant is convicted of both violent sex offenses[, a term that encompasses forcible lewd or lascivious act with a child under 14 years,] and crimes to which section 1170.1 applies, the sentences for the violent sex offenses must be calculated separately and then added to the terms for the other offenses as calculated under section 1170.1." (*People v. Pelayo* (1999) 69 Cal.App.4th 115, 124 (*Pelayo*); see § 667.6, subds. (d)(1), (e)(5).) In other words, a trial court errs when it treats a violent sex offense as a principal count and all section 1170.1 offenses as subordinate counts. (*Pelayo*, *supra*, at p. 123.) Here, the trial court made no such error. It took the two counts that fell under section 1170.1's sentencing scheme, counts 5 and 6 (the unlawful possession counts), imposed a full middle term on count 5, and imposed one-third of the middle term on count 6. It also calculated the sentences for the violent sex crimes (counts 3 and 4) separately, imposing full, separate, and consecutive terms as section 667.6, subdivision (d) required for those crimes. Accordingly, the trial court did not err.

*D. Criminal Protective Order*

Lastly, Carlton argues that the trial court's criminal protective order barring him from contacting Doe and her brothers is invalid as to the brothers.[4] The People argue Carlton forfeited the issue by failing to raise it at sentencing. However, we exercise our discretion to decide the issue, partly to forestall Carlton's alternative claim of ineffective assistance of counsel, and agree with him on the merits. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [reviewing court may reach forfeited claim]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

At issue is whether Doe's brothers are "victims" as that term is used in section 136.2, subdivision (i). Section 136.2, subdivision (i)(1) provides that when a defendant has been convicted of a crime that requires him to register as a sex offender, as Carlton has, "the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime." The chapter containing section 136.2 has a separate section defining the term "victim." Section 136 states: "As used in this chapter: [¶] . . . [¶] (3) 'Victim' means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated."

---

[4] The record on appeal does not contain the protective order, and the trial court declined to identify the named parties to the protective order on the record at sentencing, but both parties characterize the protective order as applying to Doe's brothers.

Neither the trial court at sentencing nor the People on appeal have articulated any crime that Carlton perpetrated or attempted to perpetrate against either of Doe's brothers. The People assert that, as a result of what Carlton did to Doe, the brothers were "victims of domestic violence," citing Family Code section 6211's definition of domestic violence as abuse perpetrated against second degree relatives (see Fam. Code, § 6211, subd. (f)) and Family Code section 6203's definition of abuse as including sexual abuse (see Fam. Code, § 6203). However, the People fail to point us to any portion of the record suggesting that Carlton sexually abused Doe's brothers (as opposed to Doe), and our own review of the record has not revealed any such evidence. The People also observe that one of the brothers witnessed the molestation, "causing him emotional trauma," and that the "other brother was also present and aware of the molestation." However, that by itself does not mean a defined crime has been committed against either of them, even though they have undoubtedly suffered harm from Carlton's crimes against Doe. Additionally, the People note that section 136.2, subdivision (i)(1) states that "[i]t is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim *and the victim's immediate family*" (italics added). But, by its terms, that provision only goes toward "the duration of a restraining order," not who the order applies to, which is instead addressed by the statutory definition of "victim." (See *People v. Delarosarauda* (2014) 227 Cal.App.4th

13

205, 212 ["Nothing suggests [that] sentence also modifies the scope of the restraining order"].)

The People's reliance on caselaw fares no better. As they observe, other courts have interpreted section 136.2, subdivision (i)(1)'s scope in a manner similar to ours. (See *People v. Delarosarauda*, *supra*, 227 Cal.App.4th at p. 212 ["In sum, absent evidence from which the trial court could reasonably conclude that appellate had harmed or attempted to harm Jeffrey or Kiarah, the court lacked authority to issue the no-contact protective order as to the children under section 136.2, subdivision (i)(1)."]; *People v. Lopez* (2022) 75 Cal.App.5th 227, 237 [minor children were not "victims" under §136.2, subd. (i)(1) where "[t]hey were present but asleep" when crimes were committed].) The People rely on *People v. Clayburg* (2012) 211 Cal.App.4th 86, but that case construed a different statute, and the court did not rely on any provision defining the term "victim" there (if such a provision existed). Similarly, the People rely on *People v. Race* (2017) 18 Cal.App.5th 211, but that case is factually distinguishable; in *Race*, this court found that sufficient evidence supported the protective order with respect to the defendant's daughter where the daughter "disclosed that defendant had sexually assaulted her." (*Id.* at p. 219.)[5] We therefore agree with Carlton that the trial court lacked authority to have the protective order apply to Doe's brothers.

---

[5] In *Race*, we held that a defendant did not have to be convicted of a charged crime against a person for that person to be a "victim" under section 136.2, subdivision (i)(1). (*Race*, *supra*, 18 Cal.App.5th at p. 216 ["victim" includes "a victim of a charged count of which defendant does not stand convicted so long as the court had some

*[footnote continued on next page]*

## III. DISPOSITION

We modify the judgment by (1) imposing and staying a sentence of seven years on count 2 and (2) striking Doe's brothers' names as protected persons under the criminal protective order imposed at the sentencing hearing. As modified, we affirm the judgment. We direct the clerk of the superior court to prepare an amended abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____

J.

I concur

McKINSTER_____
     Acting P. J.

---

competent evidence before it with which to conclude there was reason to believe the individual was a victim . . . such that a criminal protective order should be issued"].)

[*Carlton*, E080312]

FIELDS, J., Concurring.

I fully concur in the majority's determination as to all issues in this case except its determinations that (1) substantial evidence shows Cartlon used *force* in count 3, and (2) Carlton forfeited his argument that there is insufficient evidence he used duress in counts 3 and 4 because it is unclear whether Carlton's statement to Doe, that Doe's family would be "mad at her" if Doe disclosed the lewd acts, was made before or after the lewd acts occurred. Carlson made this argument for first time in his reply brief.

*Insufficient Evidence of Force in Count 3*

Penal Code section 288, subdivision (b)(1) (§ 288(b)(1)), prohibits the commission of any lewd or lascivious act upon a child under the age of 14 "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ." While I agree with the majority's determination that there is sufficient evidence of duress to uphold Carlton's convictions in counts 3 and 4, I respectfully disagree with the majority's conclusion that there was also sufficient evidence of force to support Carlton's conviction in count 3.

In applying the substantial evidence test properly referenced by the majority, I recognize that we view the evidence in the light most favorable to the verdict, and we must determine "whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) Nevertheless, I believe evidence of the type of force necessary to meet the requirements of section 288(b)(1) is lacking in this case.

1

For purposes of section 288(b)(1), the force must be " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' " (*People v Soto* (2011) 51 Cal.4th 229, 242 (*Soto*).) "This formulation was, and remains, an appropriate definition of the force required for an aggravated lewd conduct conviction . . . ." (*Ibid.*)

"[T]he force requirement will be deemed satisfied when the defendant uses any force that is 'different from and in excess of the type of force which is used in accomplishing similar lewd acts with a victim's consent.' " (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005 (*Alvarez*).) This includes "acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves." (*Ibid.*, citing *People v. Bolander* (1994) 23 Cal.App.4th 155, 160-161 [" 'defendant's acts of overcoming the victim's resistance to having his pants pulled down, bending the victim over, and pulling the victim's waist towards him' constituted forcible lewd conduct"]; *People v. Neel* (1993) 19 Cal.App.4th 1784, 1790 [" 'defendant's acts of forcing the victim's head down on his penis when she tried to pull away and grabbing her wrist, placing her hand on his penis, and then "making it go up and down" ' constituted forcible lewd conduct"]; *People v. Babcock* (1993) 14 Cal.App.4th 383, 388 ["force element met where the defendant grabbed the victims' hands and made them touch his genital area"].)

The only proffered evidence that Carlton used force in count 3 was the evidence that Carlton pulled up Doe's shirt before he "licked" or "kissed" Doe's chest. Carlton's act of lifting Doe's shirt to touch her chest does not constitute force different from or in excess of the type of force used to accomplish a similar lewd act with a victim's consent.

2

(*Alvarez*, *supra*, 178 Cal.App.4th at p. 1005.) Carlton's mere lifting of Doe's shirt to touch Doe's chest, when Doe was not physically restrained in any way, is insufficient to support a conviction for an aggravated lewd act. (§ 288(b)(1).) Carlton did not grab, hold, or constrain Doe in committing the lewd act of licking or kissing Doe's chest. (*Alvarez*, at p. 1005.) Carlton's acts in no way resemble acts that have been determined to constitute force for purposes of section 288(b)(1). (*Alvarez*, at p. 1005 ["[A]ppellant carried [the victim] over to the couch and resisted her attempts to push him away while he was kissing her."].)

The definition of force for purposes of section 288(b)(1) is based on the significant penal differences between aggravated lewd acts (§ 288(b)(1)) and nonaggravated lewd acts (Pen. Code, § 288, subd. (a).) (*People v. Cicero* (1984) 157 Cal.App.3d 465, 473-474, overruled in part in *Soto*, *supra*, 51 Cal.4th at p. 248.) The majority's conclusion that simply lifting a child's shirt to touch the child's chest, when the child is in no way physically restrained, virtually eviscerates the critical distinction between aggravated and nonaggravated lewd acts. (Pen. Code, § 288, subds. (a), (b).) I respectfully submit that the majority's view in this case would broaden the use of force far broader than contemplated by the Legislature. There must be a meaningful difference between aggravated and nonaggravated lewd acts to warrant the aggravated punishment. Therefore, I would find that substantial evidence does not show that Carlton used force in count 3, although I agree that sufficient evidence shows Carlton used duress in counts 3 and 4.

*No Forfeiture of Argument in Count 3*

In footnote 2 on page 7, the majority opinion notes that, "[i]n his reply brief and at oral argument, Carlton contended that there was insufficient evidence of duress because it is not clear whether Carlton's statement to Doe (that her family would be 'mad at her') was made before or after the lewd acts." The majority then asserts, "[a]n argument made for the first time in a reply brief is deemed waived when (as here) no good cause has been shown for the failure to present it earlier. (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93.)" (Maj. Opn., p. 7, fn. 2.)

While it is the general rule that a claim made for the first time in a reply brief is deemed forfeited (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [ineffective assistance of counsel claim waived where "omitted from the opening brief"]), Carlton specifically claimed in his opening brief that there was insufficient evidence of force to support a conviction for aggravated lewd conduct as charged in count 3. This was not a new issue raised in the reply brief.

Under the substantial evidence test, "[w]e review claims of insufficient evidence by examining the entire record in the light most favorable to the judgment to determine whether substantial evidence exists for a reasonable jury to find the challenged jury finding true beyond a reasonable doubt." (*People v. Ramirez* (2021) 72 Cal.App.5th 550, 558-559.) The fact Carlton raised the question of force regarding evidence of the timing of his statement to Doe in his reply brief in no way lessens our obligation to examine the entire record, including whether the alleged duress-inducing statement was made before

4

or after the alleged lewd acts occurred, in determining whether substantial evidence supports the convictions.

The timing of Carlton's statement to Doe that her family would be "mad at her" if she disclosed the lewd acts is an important factor to consider in determining whether the statement constituted duress. Duress, among other things, involves coercion which causes a person of ordinary sensibilities to submit to an act they otherwise would not have otherwise submitted to. (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.) As Carlton argues, the record is unclear on the question of *when* Carlton made the statement to Doe—before or after Carlton committed the lewd acts charged in counts 3 and 4. If Carlton made the statement after the lewd acts, or either of them, the statement could not have caused Doe to submit to the acts.

For these reasons, I respectfully disagree that Carlton forfeited his argument that his statement to Doe that her family would get "mad at her" did not constitute duress for purposes of counts 3 and 4. The evidence of the statement, standing alone, is insufficient to show duress. There is, however, other substantial evidence that Carlton used duress in committing the lewd acts in counts 3 and 4. Thus, I agree that Carlton's aggravated lewd act convictions in counts 3 and 4 must be affirmed.

FIELDS
J.

5